**In re Robert C. ROY, Sr., Debtor.**

**YOUNG CONTRACTING CO. INC. etc., Plaintiffs,**

**v.**

**Robert C. ROY, Sr., Defendant.**

**Bankruptcy No. 83–01903–BKC–TCB. Adv. No. 84–0215–BKC–TCB–A.**

United States Bankruptcy Court, S.D. Florida.

July 11, 1984.

Robert C. Furr, Boca Raton, Fla., for plaintiffs.

Daniel Bakst, West Palm Beach, Fla., for trustee.

Gary Zwickel, Lake Worth, Fla., for defendant.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The debtor's major creditor, who holds a judgment for $969,228, opposes discharge under seven counts and seeks exception from discharge under an eighth count. At trial, counts 5 and 7 were abandoned. The trustee is a nominal plaintiff. The debtor has answered and the matter was tried on June 5.

Counts 4, 6 and 8 have not been substantiated.

Count 4 identifies ten respects in which the debtor's schedules are alleged to constitute a false oath under 11 U.S.C. § 727(a)(4)(A). I find that the debtor's explanations of items 1, 2, 3, and 5 are plausible. No proof was offered with respect to items 4 and 7. The jewelry referred to in item 6 was sold before bankruptcy and did not need to be scheduled. Items 8 and 9 were abandoned at trial. Item 10 involves coins worth $220. The sum is too trivial, considering this debtor's circumstances, to support a finding that the debtor "knowingly and fraudulently ... made a false

oath." *Collier on Bankruptcy* (15th ed.) ¶ 727.04[1] n. 6.

■ Count 6 charges that the debtor has failed to explain satisfactorily his loss of $9 million between 1978 and 1984. Relying upon the findings made by the Kentucky court which rendered judgment for the plaintiff, I find that the debtor was deceived by the plaintiff creditor into the purchase of a grossly overvalued coal mine which could not be operated except at a loss. This, with the debtor's other business reverses, satisfactorily explains his inability to pay his debts.

■ Exception from discharge is sought in Count 8 under § 523(a)(2)(B). However, I do not believe that the plaintiff relied upon the debtor's financial statement, an essential element to sustain this count. In fact, I do not believe that the plaintiff even received or saw the statement before the agreement for sale was signed, in which case, plaintiff could not have relied upon the statement. Plaintiff has failed, therefore, to prove the elements required by § 523(a)(2)(B)(iii).

This leaves Counts 1, 2 and 3 which are an entirely different story. Each has been substantiated and each requires denial of discharge under § 727(a)(2). That section prohibits discharge of a debtor who during or within a year before bankruptcy, has transferred property:

> "with intent to hinder, delay, or defraud a creditor or an officer of the estate."

Count 2 presents the clearest case. On October 25, 1983 (11 days after bankruptcy), the debtor and his wife transferred to his children a ⅛th interest in Tennessee land plus oil and gas mineral rights. The land and mineral rights are worth an estimated $1.2 million. There was no consideration for the transfer. The defense is that the deed was signed and delivered four years earlier. It is argued that the "transfer" occurred when the deed was executed and delivered, well before the year covered by this statute, rather than on the date the debtor recorded the deed.

■ There has been a split of authority. *Collier on Bankruptcy* (15th ed.) ¶ 727.-02[2] n. 3. However, I am persuaded by the only Circuit decision in point, *In re MacQuown*, 717 F.2d 859 (3rd Cir.1983), which holds that the date of recordation is the date of transfer for the purposes of a similar provision in the former Act. In that case and in this one, the transfer was not perfected under applicable State law as against bona fide judgment creditors, purchasers, or mortgagees until recordation.

■ As the court noted, the old Act and the present Code define when a transfer occurs for the purpose of avoiding fraudulent transfers made within a year before bankruptcy:

> "For the purposes of this section, a transfer is made when such transfer becomes so far perfected that a bona fide purchaser from the debtor against whom such transfer could have become perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee...". 11 U.S.C. § 548(d)(1).

Although this provision is not explicitly made applicable to § 727(a)(2), there is no good reason why it should not be adopted by analogy.

As the Third Circuit has pointed out: "In short, the potential for controversy exists where the actual date of transfer is dispositive because the issue ultimately turns on credibility. In contrast, when the recording date is used there is little likelihood of dispute because the date is a matter of public record." *MacQuown* at 862.

The presumptive legislative purpose in looking at the recording date is as applicable to § 727(a)(2) as it is to § 548. I find, therefore, that this transfer was made on the date the debtor recorded the deed to his children.

■ It is also clear to me that the purpose of the transfer was to defraud creditors. If there were any question of the debtor's intent, the fact that less than two months later he recorded a deed conveying the remaining ⅞th interest to the children

dispels that doubt. Although this second transfer was detected too late to be alleged as a ground for denial of discharge, it may be considered as evidence of the debtor's intent. I am satisfied that the second deed was recorded when the debtor discovered that the first deed conveyed only a partial interest. No reason has been suggested for either transfer by the debtor other than to defraud his creditors.

The debtor's only other argument is that because the property transferred was held jointly with his wife as an estate by the entireties, his creditors were deprived of nothing by the transfer. I disagree.

Although an estate by the entireties is beyond the reach of the creditors of only one spouse in Tennessee as well as in Florida, it is not beyond the reach of the creditors of both. For that reason, in bankruptcy, that part of the estate by the entireties which is equal to the claims of creditors of *both* spouses is subject to the claims of creditors through the bankruptcy trustee. *Napotnik v. Equibank & Parkvale Savings Assoc.*, 679 F.2d 316, 320 (3rd Cir. 1982). The claim file in this case includes at least one such judgment claim in the amount of $86,712. I find, therefore, that the transfer in question here was of valuable property subject to the claims of creditors of the bankruptcy estate.

Discharge must be denied under § 727(a)(2)(B) on account of the transfer alleged in Count 2.

Count 3 rests upon the transfer without consideration of a $175,000 coin collection by the debtor to an adult son in August 1983, six weeks before bankruptcy. The transfer is admitted but the defense is that the coins had been transferred to the son 14 months before bankruptcy through a notarized but unrecorded bill of sale. I find that the debtor is estopped to deny that the property belonged to him at the time of the 1983 transfer.

This finding is based upon a pleading filed by the debtor and his testimony four months after the date of the bill of sale in a lawsuit in which he alleged that the coins were owned by him and his wife. The debtor had pledged and delivered the coins as collateral for a bank loan before the bill of sale was executed. The son never had possession of either the coins or the bill of sale before August 1983.

For the purposes of this action, it is not necessary to decide whether the son ever acquired title before August 1983 or whether, if he did, he merely held title in trust for his father or gave the coins back to him. I find that the debtor owned as well as had possession of the coins on August 30, 1983 when he gave them to his son and that he did so with intent to defraud his creditors.

The debtor has argued that the coins were entireties property at the time of the transfer. I have found that evidence insufficient, but if I am mistaken, that defense fails here for the same reason it fails in Count 2.

Discharge, therefore, must also be denied under § 727(a)(2)(A) on account of the transfer alleged in Count 3.

Count 1 involves the transfer on September 30, 1983, 14 days before bankruptcy, of two shares owned by the debtor and his wife in the corporate Florida insurance agency. The transfer was to two adult sons and, like the other transfers, was without consideration. The transfer is undisputed. The debtor has defended with the same argument based upon the estate by the entireties that has been discussed in connection with Count 2. That argument must fail here for the same reason it fails there.

A second argument here is that the transfer represented only $2/1000$ths of the insurance agency and, therefore, was of such insignificant value as to negate any inference of actual intent to defraud creditors. The argument is bolstered by the fact that the debtor's schedules filed three months after the transfer of these two shares disclosed this transfer:

"My wife and I transferred to our children jointly owned stock certificate for 2 shares in Robert C. Roy Agency, Inc."

In May 1973, ten years before bankruptcy, the other 998 corporate shares appear to have been issued to all four children. However, after the date of that document, the debtor repeatedly and consistently represented that he and his wife jointly owned the corporation through the two shares admittedly retained by them and transferred on the eve of bankruptcy.

 This record reflects that: (1) The corporate tax returns for 1979 through 1982 each show the debtor to be the only shareholder. (2) In two financial statements to the Sun First National Bank, in 1978 and 1981, the debtor made the same representation. (3) The two shares were pledged to Sun First National Bank as collateral for a loan and in a 1982 action to recover the shares, the debtor alleged that he and his wife jointly owned the corporation through the two shares. (4) In 1982, the corporation's chapter 11 bankruptcy petition signed by the debtor made the same representation. (5) In August 1982, the debtor and his wife made the same representation in a contract to sell the corporation to another creditor. The sale later fell through. (6) In March 1982 in a deposition taken by still another creditor, the debtor testified that there were only two shares issued, one owned by his children and the other by him and his wife. In at least three of these instances, the debtor represented that this interest had a substantial value ranging from $1,000 to $2,500,000.

I find the debtor estopped now to argue that the transfer was of little or no value to his estate at the time of transfer. I find that the property transferred had substantial value.

I also find that the debtor's actual intent and purpose in transferring the two shares was to defraud his creditors. No other plausible purpose has been suggested. If this had been the only transfer in the record before me, ·I could give greater weight to the debtor's voluntary disclosure three months later of the transfer. It was not. On this record, therefore, I can only conclude that this transfer was another last minute effort by the debtor to place his remaining assets beyond the reach of his creditors.

It follows that discharge must additionally be denied under § 727(a)(2)(A) on account of the transfer alleged in Count I.

As is required by B.R. 9021(a), a separate judgment will be entered denying discharge under § 727(a)(2)(A) and (B). Costs may be taxed on motion.