## Storch *et al. versus* Carr.

Parol evidence, that it was agreed at the time of the execution of a convey-ance of land, that if the grantee failed to fulfil a bond for the maintenance of the grantor, the land should revert again to such grantor, is inadmissible to affect the legal title acquired by the deed, or the right to recover the possession and mesne profits.

A purchaser at sheriff's sale has no right of possession until after the acknowledgment of the deed.

If the premises be sold by the sheriff as the property of the plaintiff pending the ejectment, but the purchase-money has not been paid, nor the deed acknowledged, at the time of trial, the sale does not divest the right of the owner, nor bar his recovery in the action.

Intermeddling with real estate by putting a party in possession, and after-wards making a written lease of it to other parties, makes the parties so interfering liable with the parties occupying the premises for the mesne profits.

A party cannot complain that the instructions of the court are not suffi-ciently full, if there was no prayer for further instructions.

The presumption is, that the court below submitted no question to the jury, without evidence relating to it; and the party alleging the contrary, in this court, must show it clearly and distinctly.

ERROR to the Common Pleas of *Susquehanna county.*

This was an ejectment brought by John Carr, against Hermon Storch, Dorsatus Norton, Eve Carr, and C. N. Miller, to recover the possession of 102 acres and 121 perches of land. The pre-mises had formerly belonged to Slocum Carr, a brother of the plaintiff, and on the 15th of December, 1852, Slocum Carr and Eve his wife conveyed them to the plaintiff. He on the 6th April, 1853, leased them for one year to Charles Coil, who went into possession a short time before Slocum Carr and his wife vacated them, but with their permission and consent. Slocum Carr died in 1853, and in December, 1854, the premises being vacated, his wife Eve went into possession and continued there until the time of trial. In the spring of 1855, Storch went into the possession with Eve Carr, farming the place on the shares, and continued there for one year. On the 11th April, 1856, Peck and Miller,

[Storch *et al. v.* Carr.]

the overseers of the poor of the township in which the land is situate, leased it to Jeremiah Rounds.

The land was levied under an execution issued on a judgment against John and Slocum Carr, and the land was struck down by the sheriff to Benjamin Ayres, but the purchase-money was not paid, and no deed was acknowledged to the purchaser when the cause was tried, on the 27th November, 1856.

The defendants then offered in evidence a bond executed by John Carr, the plaintiff, to Slocum and Eve Carr, conditioned for their maintenance, and to prove by parol that this was the consideration of the transfer by them to John of all their property real and personal, and that it was understood by the parties at the time the contract was made, that the land should revert to them if the plaintiff failed to fulfil the bond; and that he failed to fulfil it in reference to Eve Carr, before this suit was brought, and that she in consequence became a legal charge upon the township, the overseers of which had her in charge, and that she went into the possession of the premises, they being vacant at the time, and has remained there ever since, and that the profits thereof have been applied to her support. The offer was objected to by the plaintiff, and rejected by the court, and a bill of exceptions sealed at the instance of defendants' counsel.

The defendants contended that the conveyance to the plaintiff was void, because Slocum Carr, at the time of making it, was not of competent understanding to execute a deed.

The plaintiff, before the trial, gave notice that he would claim to recover the mesne profits in the action.

The court below (WILMOT, P. J.) charged the jury as follows:—

"The important fact for the jury to pass upon in this case, is, whether or not Slocum Carr was of competent understanding when he executed the deed to the plaintiff. If not, then the deed is void, and the plaintiff cannot recover. Mere *weakness* of mind, natural to impaired physical health, is not sufficient to avoid a deed. Did the grantor understand and fully comprehend the business in which he was engaged when he made this deed to the plaintiff? If so, the deed is good, and passes the title to the plaintiff.

"The sheriff's sale of the land did not divest the plaintiff of his title, so as to bar his recovery, the deed never having been acknowledged by the sheriff; nor indeed has the purchase-money been paid. If the jury believe that Norton and Miller, who it seems were supervisors of Clifford, interfered, and made arrangements touching the renting and occupation of this property—putting Storch in for the season of 1855, and Miller with another—making a written lease for the premises for 1856, then they are liable to account to the plaintiff in this action for the profits. The annual value of the property is a question for the jury."

The jury found for the plaintiff, and assessed the damages for

[Storch *et al. v.* Carr.]

mesne profits at $200, and the court below entered judgment on the verdict.

The errors assigned were:—That the court below erred in rejecting the bond with the parol evidence.   2. In charging the jury that the sheriff's sale of the land, the purchase-money not having been paid or deed acknowledged, did not divest the plaintiff's title, nor bar a recovery in the action.   3. In also charging, that if the jury believed that Norton and Miller intermeddled with and made arrangements in regard to the renting and occupying of the land by making a lease for 1856, and putting Storch in possession for the year 1855, they were liable to account to the plaintiff in this action for the mesne profits.

*R. B. Little,* for plaintiff in error, argued that the evidence offered was competent, as a defence to Eve Carr, to defend her possession against the plaintiff.   That it was the condition of the sale, and that being broken and the premises vacant, she might enter and hold until he fulfilled the stipulations of the agreement. It was also evidence on the question of mesne profits, showing that they had gone to her support, for which the plaintiff was bound to provide.   It was also evidence for the other defendants, severing them from the possession at the date of the suit, and from all perception of profits since.   It would at all events have been admissible in mitigation of damages: 2 *Wils.* 121; 1 *Ch. Pl.* 196.

2. The sheriff's sale cut off the plaintiff's right of possession, and related back to the date of the sale: Morrison *v.* Wurtz, 7 *Watts* 437 ; Clark *v.* Stanley, 10 *Barr* 472.

Especially where, as here, the circumstances show that the delay in perfecting the deed, was a mere artifice to evade this question.

If the plaintiff part with his title before verdict, he cannot recover, even though the vendee be made a co-plaintiff: McCulloch *v.* Cowher, 5 *W. & S.* 427.   When that deed is perfected, the purchaser can recover *mesne* profits back to the day of sale, and yet here Carr was permitted to recover them to the day of trial.   We submit this exact point is decided in Robb *v.* Mann, 1 *Jones* 300 ; Bellas *v.* McCarty, 10 *Watts* 22.

3. At the time the ejectment was brought, Eve Carr was in independently ; the others were in nowise connected with the possession until afterwards.   There was nothing to connect Miller and Norton with the previous possession of Eve Carr and Storch: 1 *Jones* 539.   The recovery of *mesne* profits could not be joint under the evidence: 1 *Ch. Pl.* 195.

*W. & W. H. Jessup,* for defendant in error.—The evidence was

[Storch _et al. v._ Carr.]

inadmissible under the statute of frauds. There was no provision in the bond or in the conveyance, authorizing an entry for condition broken, nor is there anything in the offer to that effect. If the evidence had been received, it could not have affected the plaintiff's right to recover. The question of mesne profits could not have been affected by the offer. If the plaintiff was entitled to the land, he was likewise entitled to the rental, while he was kept out of possession.

Our statute does not allow unliquidated damages upon a bond to be set off in an action of trespass.

The sale to Ayers, without acknowledgment of the deed or payment of the purchase, did not divest John Carr's title: 1 _Wh. Dig._ 8 ed. p. 790, MS.; Hall _v._ Benner, 11 _S. R._ 402; Bellas _v._ McCarty, 10 _Watts_ 22.

As to the recovery against Norton and Miller, it was submitted to the jury to find whether they had intermeddled with and rented the property. There was no prayer for instruction for a several finding. Nor could there be a severance. If they were trespassers, they were all liable together. The jury found they were all engaged in the wrongful entry and detention, and as a necessary conclusion all were liable.

The opinion of the court was delivered by

KNOX, J.—John Carr, the plaintiff, showed a legal title to the land in dispute. The offer by the defendants to prove by parol, that at the time it was conveyed to John G. Slocum and Eve Carr, the agreement was, that the land should come back to Slocum and Eve, if John failed to fulfil a bond for their maintenance, was wholly inadmissible. Such an agreement resting in parol, gave no right to a reconveyance, and could not be received to affect in any manner John's legal title, or his right to recover the possession with mesne profits.

This action was commenced in March, 1855, and tried in November, 1856. In October, 1856, the sheriff of Susquehanna sold the plaintiff's interest in the land in controversy, by virtue of an execution issued on a judgment against him, but at the time of the trial the deed had not been acknowledged, nor was the purchase-money paid. The Court of Common Pleas very properly held, that the sale did not divest the plaintiff's title so as to bar his recovery. The purchaser had no right of possession until the acknowledgment of his deed, and consequently the right remained in the owner of the legal title.

It is said that the Court of Common Pleas erred in permitting the jury to assess damages for mesne profits, against Norton and Miller, two of the defendants, and against all of the defendants jointly.

[Storch *et al. v.* Carr.]

The learned judge before whom the cause was tried, instructed the jury, that "if they believed that Norton and Miller, who it seems were supervisors of Clifford, interfered and made arrangements touching the renting and occupation of this property, putting Storch in for the season 1855, and Miller with another, making a written lease for 1856, then they are liable to account to the plaintiff in this action for the profits."

If the facts stated by the judge were found by the jury, the liability of Norton and Miller for mesne profits cannot be questioned. How far that liability extended, and whether it was a joint one with the other defendants, do not appear to be questions which were raised on the trial below. The instruction given was correct. If it was not full enough to cover the whole case, either party could have obtained further instructions by asking for them.

It is argued by the counsel for the plaintiff in error, that there was no evidence of the alleged interference by Norton and Miller. We have often said that the presumption is, that no question was submitted to a jury without evidence, and that before we would reverse upon such an assignment, the error must be most clearly shown by the party alleging its existence. In the present case we think there was evidence sufficient to submit to the jury, that the house in controversy was occupied by a person put in possession by Norton and Miller for the year 1855, and Peck and Miller gave a written lease for the year 1856. We see nothing in the case which calls upon us to reverse the judgment of the Common Pleas.

Judgment affirmed.