In re Frank **DUDLEY**, a/k/a Frank E. Dudley, Debtor.

UNITED PENN BANK, Plaintiff,

v.

Frank **DUDLEY** a/k/a Frank E. Dudley, Defendant.

Bankruptcy No. 5–82–00628.
Adv. No. 5–82–0721.

United States Bankruptcy Court,
M.D. Pennsylvania.

April 20, 1984.

---

Joyce A. Stack, Harrisburg, Pa., for Dudley.

Ronald V. Santora, Wilkes-Barre, Pa., for Union Penn Bank.

### OPINION AND ORDER

THOMAS C. GIBBONS, Bankruptcy Judge:

The United Penn Bank (Bank), a creditor of Frank Dudley, a/k/a Frank E. Dudley (Dudley), commenced this proceeding seeking a modification of the automatic stay imposed by 11 U.S.C. § 362(a) in order to proceed with State Court remedies available to the Bank to gain possession of property purchased by the Bank at a Sheriff's Sale. Dudley filed an Answer to the Bank's Complaint and Counterclaim alleging that a Sheriff's Sale of the property constituted a fraudulent conveyance pursuant to § 548(a) of the Bankruptcy Code.

### FINDINGS OF FACT

1. On or about November 11, 1972, the Bank loaned Dudley Three Thousand Eight Hundred ($3,800.00) Dollars to be repaid over a period of fifteen (15) years at seven and one-half (7½%) per cent interest.

2. The loan is secured by a mortgage recorded in the Office of the Recorder of Deeds for Luzerne County in Mortgage Book 1036 at page 499. The property is further encumbered by a judgment in the amount of Three Thousand Eight Hundred Seventeen and 08/100 ($3,817.08) Dollars.

3. Dudley defaulted under the terms of the mortgage because of a failure to make requisite payments on the indebtedness.

4. The Bank filed an action in mortgage foreclosure in the Luzerne County Court of Common Pleas at No. 2458–C of 1981 and on September 22, 1981, obtained a judgment against Dudley.

5. The Bank subsequently filed a Writ of Execution at No. 439 of 1981 and after proper notice the Bank was the successful bidder at a Sheriff's Sale held on October 30, 1981.

6. The Bank became the titled owner of the property pursuant to a Sheriff's Deed dated October 30, 1981 and recorded in Luzerne County Deed Book 2061, at 276.

7. After repeated demands for possession of the property, the Bank filed an action in Ejectment at No. 462–C of 1982 on February 5, 1982 and obtained a Judgment against Dudley on August 5, 1982. The Bank has made several unsuccessful attempts to serve Dudley with a copy of a Writ of Possession.

8. The Debtor filed for relief under Chapter 13 of the Bankruptcy Code on August 25, 1982.

9. The Bank filed this matter in order to proceed with service of the Writ of Possession on Dudley.

## DISCUSSION

The Bank contends that Dudley had no interest in the property on the day he filed his Chapter 13 Petition because the Sheriff's Sale transferred title in the property from Dudley to the Bank. The argument continues that the property is not property of the estate and, therefore, Dudley cannot claim an interest or equity in the property. Dudley responds, asserting that he has an interest in the property because the Sheriff's sale amounted to a fraudulent transfer pursuant to § 548(a) of the Code. Dudley asserts that not only did he receive less than the reasonably equivalent value in exchange for the transfer, but was also made insolvent by the foreclosure sale. The Bank answered Dudley's assertion by claiming that the value given at the foreclosure sale not only represented reasonably equivalent value as contemplated by § 548, but also nearly equaled the fair market value of the property.

In addressing Dudley's Counterclaim, we are asked to find that a Sheriff's Sale was a fraudulent transfer under § 548(a). In pertinent part, § 548(a) provides:

§ 548. **Fraudulent transfers and obligations.**

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor

\* \* \* \* \* \*

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(1) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

\* \* \* \* \* \*

The first issue we must determine is whether Dudley has standing to initiate a § 548(a) action in order to set aside the Sheriff's Sale as a fraudulent transfer. Dudley cites § 522(h) as his authority to initiate a § 548 action. In pertinent part, § 522(h) provides:

(h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

We conclude that a Chapter 13 debtor has proper standing pursuant to § 522(h) to commence an action under § 548(a). See 3 *Collier on Bankruptcy* (15th ed.) ¶ 522.30 and the Notes of the Committee on the Judiciary, House Report No. 95–595, (U.S.Code Cong. & Admin. News 1978, pp. 5787, 5963), contained in the Historical and Revision Notes for § 522. See also *In re Carr* for the conclusion that a debtor may maintain an action against a defendant under § 548 without utilizing § 522(h). However, in order for Dudley to avoid a transfer under § 522(h) the particular transfer must be avoidable under § 548. See § 522(h)(1). Because

Dudley cannot meet the requirements of § 548, we find that his attempt to avoid the transfer of the property under § 522(h) also fails.

■ The next issue is whether a § 548(a) claim can properly be brought as a counterclaim to a § 362(d) motion. Although we recognize that the most proper way to seek avoidance of a fraudulent transfer under § 548 is to initiate a separate complaint, we nevertheless are of the opinion that a counterclaim urging the existence of a fraudulent transfer under § 548 does not need to be severed from a § 362 motion. We reach this determination because Dudley's counterclaim arises out of the same transaction or occurrence that is the subject matter of the Bank's § 362 motion. In addition, resolution of both proceedings require a determination of many common issues of fact and law such as the fair market value of the subject property and whether Dudley had any interest in the property before he filed his Chapter 13 petition. In light of the foregoing, we perceive no reason why the handling of both the § 548 counterclaim and § 362 motion would in any way adversely affect the Bank's right to adequate protection of its interest in the property.

Our decision centers on whether the Sheriff's Sale of the property resulted in Dudley receiving reasonably equivalent value in exchange for the transfer pursuant to § 548(a)(2). To reach this decision, the fair market value of the property must be determined. Both parties presented evidence of the fair market value of the property through real estate experts. Joseph A. Moore, the Bank's expert, testified that the property had a fair market value of Six Thousand Five Hundred ($6,500.00) Dollars. Dudley's expert, John M. DiLiberto, testified that the property had a fair market value of Nine Thousand ($9,000.00) Dollars in July 1980, but increased to Eleven Thousand Five Hundred ($11,500.00) Dollars in August 1983. We must note that Mr. DiLiberto did not prepare an updated real estate appraisal to support his claim that the property had a fair market value

of $11,500.00 in 1983. In addition, the testimony indicated that there was substantial deterioration of the building especially in the upstairs bathroom area. Mr. DiLiberto also testified that he noted in his 1980 real estate appraisal that the building was in need of much rehabilitation, such as replacing the kitchen and bathroom floors, but as of August of 1983, much of the work had not been completed. Mr. Dudley stated that although he made some repairs, the house was still in need of much rehabilitative work. On the basis of the evidence adduced at trial, we find the Bank's expert testimony credible and find the property had a fair market value of Six Thousand Five Hundred ($6,500.00) Dollars.

The United Penn Bank, the lone bidder at the Sheriff's Sale, paid the Sheriff Two Thousand Five Hundred Ninety-Five and 59/100 ($2,595.59) Dollars for the property. This amount represents the total taxes and costs of the foreclosure sale required to be paid to the Sheriff. It is this amount which Dudley contends is not a reasonably equivalent value given in exchange for the property. To support his position, Dudley relies on the oft-cited case of *Durrett v. Washington National Insurance Company*, 621 F.2d 201 (5th Cir.1980), which represents the position that transfers for less than seventy (70%) per cent of the market value of property are avoidable as fraudulent conveyances. The Bank responded by relying on cases that seemingly reject the *Durrett* holding. See *In re Alsop*, 14 B.R. 982 (Bkrtcy.D.Alas.1981); *Lawyers Title Insurance Corp. v. Madrid*, 21 B.R. 424 (9th Cir.1982). The Bankruptcy Court for the Eastern District of Pennsylvania has considered what the applicable test should be to determine whether a foreclosure sale on real property should be avoided under § 548(a)(2). In *In re Jones*, 20 B.R. 988 (Bkrtcy.E.D.Pa.1982), although the Court agreed with the conclusion in *Durrett* that § 548(a)(2) was applicable to foreclosure sales, it would not adopt the finding that reasonably equivalent value must be at least seventy (70%) per cent of the fair market value. *Id.* at 994, fn. 23. The *Jones* court concluded that a determination

of what is a reasonably equivalent value must be made on a case-by-case basis. Like the *Jones* court, we also will not adopt the 70% standard of the *Durrett* case.

■ At this point, we must determine exactly what value was given by the Bank at the Sheriff's Sale. Dudley asserts that the only value given was the $2,595.59 paid to the Sheriff representing costs and taxes. The Bank asserts that in addition to the costs and taxes, it also is entitled to credit against the purchase the outstanding indebtedness against the property. To support its position, the Bank directs the Court's attention to 42 Pa.C.S.A. Rule 3133:

> *Rule 3133. Lien Creditor as Purchaser*
>
> Whenever real or personal property sold on execution is purchased by the plaintiff or any other lien creditor entitled to receive all or part of the proceeds of the sale, the sheriff upon proof of that fact shall accept on account of the purchase price the receipt of the purchaser up to the amount of the proceeds to which he is entitled. The sheriff may require payment in cash of all legal costs distributable from the proceeds of the sale.

The Bank contends that by applying this rule, the total value given to the Sheriff was $6,343.67. The Bank asserts that $3,748.08 of the $6,343.67 represents the outstanding balance on the mortgage indebtedness and $2,595.59 represents the total for taxes and costs. The District Court for the Middle District of Pennsylvania was faced with a very similar problem in *In re The Southerton Corporation v. United Penn Bank*, 17 B.R. 472 (Bkrtcy.M.D.Pa. 1982). The Court wrote that Southerton Corporation attacked United Penn Bank as not being a good faith purchaser because of the failure to pay "value" at a Sheriff's Sale. The amount paid to the Sheriff by the United Penn Bank, representing only the costs of conducting the Sheriff's Sale, was $1,431.73. The conceded fair market value of the property was $360,000.00. The Court determined that pursuant to 42 Pa.C.S.A. Rule 3133, the United Penn Bank

had paid much more than $1,431.73. The Court wrote:

> If the sheriff's sale purchase price represented the sole value given by United Penn, a serious question concerning its good faith status might arise. As a matter of state law, however, United Penn's "value" given far exceeds the cash amount actually paid.
>
> As United Penn observes in its brief, the price paid represents only the cost of conducting the sheriff's sale. United Penn was entitled to credit against the purchase price of the property amounts outstanding on the underlying judgment. Pa.R.C.P. 3133 provides:
>
> [quoting Rule 3133]
>
> Accordingly, the failure to make a cash outlay in some amount exceeding $1,431.73 is not necessarily dispositive of the question of "value" given. In the circumstances of this case, the requirement that the "value" given bear a reasonable relationship to the market value of the property would undoubtedly be satisfied if the sheriff's sale had the effect of extinguishing the outstanding debt to United Penn.

Like the *Southerton* court, we find the United Penn Bank gave value far in excess of the cash amount actually paid to the sheriff. In fact, the value given almost equaled the full amount of the fair market value of the property and was well in excess of the 70% standard in the *Durrett* case. Consequently, we find that Dudley did not meet the requirements of either § 548(a) or § 522(h) in his attempt to have the Sheriff's Sale avoided as a fraudulent transfer.

We now consider the Bank's motion for relief from stay. The evidence produced at trial reveals that the filing of the action in mortgage foreclosure and the obtaining of a judgment against Dudley, the filing of the Writ of Execution, the Sheriff's Sale, and the recording of the Sheriff's Deed in Luzerne County Deed Book 2061 at page 276 were all completed months before Dudley filed his Chapter 13 petition. We must

note that Dudley has neither questioned nor raised any defense to the legality of any of the State Court proceedings initiated by the Bank to gain possession of the property. The Bank contends Dudley did not have any equity or interest in the property before he filed his Chapter 13 Petition and, therefore, the automatic stay should be lifted. In a case with facts very similar to the above, the Court in *In re Sparkman*, 9 B.R. 359 (Bkrtcy.E.D.Pa.1981) wrote:

> Under Pennsylvania law, the debtor lost all title and interest in the property in question when the mortgagee's attorney bid it in at the sheriff's sale, executed the required documents, and the acknowledged deed was delivered by the prothonotary to the sheriff. See Pa.Stat. Ann. tit. 12, § 2537 (Purdon). Consequently, the debtor had no interest whatsoever in that property when he subsequently filed his petition under chapter 13 of the Code. Therefore, the debtor can have no equity in that property within the meaning of that term in § 362(d)(2), and the mortgagee is entitled thereunder to relief.

The *Sparkman* court went on to conclude that the automatic stay of § 362(a) never applied to the subject property because the debtor had no interest in the property prior to his filing of a Chapter 13 petition. In addressing this point the Court remarked at page 363:

> Moreover, in light of the evidence presented and our conclusion that under Pennsylvania law the debtor did not have any interest in the property at the time he filed his petition under chapter 13, we conclude that the automatic stay never applied to acts against that property. Section 362(a) of the Code provides for an automatic stay of all proceedings or acts against the debtor, the debtor's property or property of the estate. It does not stay acts against property which is neither the debtor's nor the estate's.

We conclude, therefore, that the automatic stay never applied to Dudley's property and did not prohibit the Bank from serving Dudley with the Writ of Possession to gain possession of the house.

This opinion constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.