**In re Jerome & Sherry JACOBS, Debtors.**

**FIRST EASTERN BANK, N.A. and Joseph Gorman, Trustee, Plaintiffs,**

v.

**Jerome & Sherry JACOBS and Harold & Merle Jacobs, Defendants,**

**and**

**Jerome Jacobs and Sherry Jacobs, Defendants.**

Civ. Nos. 85–1221, 85–1222.

United States District Court, M.D. Pennsylvania.

Dec. 30, 1985.

Charles P. Eyer, Stroudsburg, Pa., for First Eastern Bank, N.A.

John P. Lawler, Stroudsburg, Pa., for Jerome R. and Sherry E. Jacobs.

Peter J. Quigley, George P. Westervelt, Stroudsburg, Pa., for Harold and Merle Jacobs.

Joseph R. Gorman, Tunkhannock, Pa., trustee.

John P. Lawler, Stroudsburg, Pa., for trustee.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Harold and Merle Jacobs ("Defendants") filed a petition for review of an Order in Bankruptcy which required defendants to turn over certain properties or their fair equivalent value to the trustees in bankruptcy. *See* Civil No. 85–1221. Jerome and Sherry Jacobs ("Debtors") appeal the Bankruptcy Court's denial of their discharge pursuant to 11 U.S.C. § 727(a)(2)(A).[1] *See* Civil No. 85–1222. The trustees, First Eastern Bank, N.A. and Joseph Gorman, Esquire ("Trustees") oppose both petitions.[2] All parties submitted briefs and the petitions are ripe for disposition. For the reasons set forth below, the decision entered by the Bankruptcy Judge will be affirmed.

---

1. Section 727(a)(2)(A) provides:
   (a) The court shall grant the debtor a discharge, unless—
     (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
       (A) property of the debtor, within one year before the date of the filing of the petition. . . .

2. For purposes of clarity, defendants and debtors collectively will be referred to as "objectors."

## Standard of Review

In reviewing a Bankruptcy Order, this court will disturb the Bankruptcy Judge's findings of fact only if they are found to be "clearly erroneous." Bankr.Rule 8013, 11 U.S.C. Thus, in order to alter the Bankruptcy court's findings of fact, the court must be left with a definite and firm conviction that the Bankruptcy Judge is mistaken. *See In Re Philadelphia Consumer Discount Co.,* 37 B.R. 946 (Bankr.Pa.1984). In essence, the objectors' complaints relate to findings of fact [3] so that the "clearly erroneous" standard applies.

Objectors aver that a finding of fraudulent intent is not subject to this standard and requires independent review on appeal. *See* Document 3 of the Record. In the habeas corpus context, as elsewhere, the United States Supreme Court recently stated, "that an issue involves an inquiry into state of mind is not at all inconsistent with treating it as a question of fact." *Miller v. Fenton,* —— U.S.——, ——, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985). Similarly, the Third Circuit Court of Appeals addressed this issue and stated:

> We do not, however, accept appellee's argument that the inferential status of the bankruptcy judge's finding subjects it to plenary review on appeal to the district court. A person's state of mind is a narrative or historical fact, albeit one that often must be determined by drawing inferences from evidence of his conduct and the surrounding circumstances. Drawing such inferences does not, however, require application of a legal standard to historical facts; it demands application of logic and human experience, ..., *and the inference drawn as to intent is a statement of fact and not a holding of law.*

*Universal Minerals, Inc. v. C.A. Hughes & Co.,* 669 F.2d 98, 104 (3d Cir.1981). Thus, the court held that the Bankruptcy court's factual finding of an intent to abandon was reviewable by the district court under a "clearly erroneous" standard. *Id.* The Court of Appeals stated that numerous decisions have utilized the "clearly erroneous" standard in reviewing findings as to intent. *Id.* at n. 7. *See also In Re Barclay Industries, Inc.,* 736 F.2d 75 (3d Cir. 1984) (issue involving a party's intent is a question of fact). *But see Minnick v. Lafayette Loan & Trust Co.,* 392 F.2d 973 (7th Cir.1968), *cert. denied,* 393 U.S. 875, 89 S.Ct. 170, 21 L.Ed.2d 370 (1968) (findings of fact reviewable under "clearly erroneous" standard; conclusion of intent from those facts not reviewable under "clearly erroneous" standard). Accordingly, the "clearly erroneous" standard applies to a finding of fraudulent intent. To the extent any of the Bankruptcy court's holdings relate to a question of law, this court will utilize independent review.

## Facts

The factual findings, as set forth by the Bankruptcy Judge, are as follows: On December 23, 1982, within eight (8) months of the debtors having filed a bankruptcy petition, debtors transferred two improved parcels of real estate to defendants. Defendant Harold Jacobs and Debtor Jerome Jacobs are brothers. Additionally, both Harold and Jerome Jacobs are licensed to do real estate business in Pennsylvania. No mortgages or security documents accompanied the transfer of the properties at 151 Analomick Street, East Stroudsburg, Pennsylvania and Main and Prospect Streets, Tobyhanna, Pennsylvania. At the time the petition was filed, debtors did not report income as the result of the conveyances on their statement of financial affairs. Debtors also denied having made any transfers or gifts to relatives during the year immediately preceding the filing of their petition. Debtors aver that this omission from their statement of financial affairs was

---

**3.** Objectors contend that the debtors were not insolvent when the transactions in question took place. As part of this objection, objectors aver that the Bankruptcy Judge erred in finding that the debtors transferred the properties with the intent to hinder, etc., their creditors. Objectors also dispute the Bankruptcy court's finding that transfers took place between debtors and defendants.

done through inadvertence. *See* Hearing Transcript, Document 9 of the Record at 4. The trustees alleged that the conveyances constituted preferential transfers *and* that they were made with the intent to hinder, delay or defraud creditors. The Bankruptcy court issued an Order denying debtors' discharge and requiring defendants to turn over the two properties or their fair equivalent value to the trustees.

### Discussion

■ The Bankruptcy Judge found that the transfers constituted preferential transfers under § 547(b) [4] *and* that the transfers were made with actual intent to hinder, delay, or defraud creditors for purposes of § 548(a)(1). [5] The court finds that the Bankruptcy Court's holding that the transfers were fraudulent pursuant to § 548(a)(1) is amply supported in the record. The court need not decide whether debtors were insolvent at the time of the transfers because a finding of insolvency is not required under § 548(a)(1). [6] *See In Re Vaniman Inter'l, Inc.*, 22 B.R. 166 (Bankr. N.Y.1982).

To compel defendants to turn over the properties or their fair equivalent value to the trustees, the Bankruptcy Judge was required to find that the transfers were made with actual intent to hinder, delay, or defraud creditors. In deciding the fraudulent transfer issue, the Bankruptcy Judge stated:

> While no finding of fraud can be predicated solely on the fact that a transaction resulted in a transfer of property between relatives or members of a family, such transactions are generally subjected to close scrutiny when challenged by the trustee, and the relationship of the parties in conjunction with other circumstances often makes a trustee's case compelling notwithstanding the absence of direct evidence of fraud.

Bankruptcy Opinion, Document 2 of the Record at 6. The Bankruptcy Judge concluded by stating:

> On the basis of the pleadings, trial briefs and oral testimony adduced at trial, we find that the surrounding circumstances

---

**4.** The preferential transfer section of the Bankruptcy Code provides:
> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> (A) on or within 90 days before the date of the filing of the petition; or
> (B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider;
> (5) that enables such creditor to receive more than such creditor would receive if—
> (A) the case were a case under Chapter 7 of this title;
> (B) the transfer had not been made; and
> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). The only criteria concerning § 547(b) objectors dispute is the finding that the debtors were insolvent at the time of the transfers and that "transfers" did occur. *See* Brief of Appellants at Document 8 of the Record.

**5.** Section 548(a)(1) provides:
> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> (1) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted....

11 U.S.C. § 548(a)(1). Objectors contend that the transfers were not made with actual intent to defraud creditors.

**6.** Insolvency at the time of transfer is required under § 547(b). In essence, the Bankruptcy Code utilizes a "balance sheet" approach in determining insolvency. *See* 11 U.S.C. § 101(29). Property transferred by debtors with an intent to defraud creditors must be excluded from the debtor's assets when the question of solvency is resolved. *See* 11 U.S.C. § 101(29)(A)(i). While the record may support a finding that debtors were insolvent at the time the transfers were made, the court need not decide the issue in light of the holding under § 548(a)(1).

of the transfers and the family relationship between the debtors and Jacobs dictating a close scrutiny of the transfers leads to the conclusions that the conveyances were in violation of § 548(a)(1) in that they were made with an intent to defraud creditors.

*Id.* at 7. Obviously, the Bankruptcy Judge rejected objectors' explanations concerning various indications that the properties were transferred with actual intent to defraud creditors. *See supra,* at 4. The court agrees with the Bankruptcy Judge.

■ Debtors held title to the properties in excess of eight (8) and six (6) years respectively before transferring them to the male debtor's brother eight (8) months before filing for bankruptcy. No mortgages or other security accompanied the transfers. Objectors allege a series of unwritten agreements characterizing the business relationship between the two (2) brothers. As the Bankruptcy Judge held, however, "to the rest of the world, especially the creditors lending the debtors money, only the debtors had title to the real estate." Bankruptcy Opinion, Document 2 of the Record at 8–9. In fact, debtors Statement of Financial Affairs failed to disclose any transfers to relatives during the year preceding their filing for bankruptcy. *Cf. Minnick v. Lafayette Loan & Trust Co., supra* (bankrupts openly revealed at all times the conveyance of their home and the terms of the sale). Furthermore, debtors reported no income as a result of the transfers. Again, this court does not sit as a factfinder and the court cannot conclude that the Bankruptcy Judge's findings are "clearly erroneous." *See e.g., Losner v. Union Bank,* 374 F.2d 111 (9th Cir.1967). Accordingly, the holding that the transfers were in violation of § 548(a)(1) will be upheld. Although objectors only vaguely refer to the issue, the court finds that the Bankruptcy Court's holding that defendants knew debtors' precarious financial condition at the time of the transfers is not "clearly erroneous." Furthermore, there is no proof that any consideration was extended at the time of the transfers. Thus, defendants are not entitled to the good faith exception contained in § 548(c).[7] *See* Bankruptcy Opinion, Document 2 of the Record at 10.

Objectors maintain that no "transfer" of the properties occurred because debtors had withdrawn their equity in the properties before they were turned over to defendants. *See* Document 4 of the Record. In other words, they allege that the deeds transferred in December, 1982, merely evidenced the fact that the debtors no longer had any equity in the properties. *Id.* at 15. The definition of "transfer" in the Bankruptcy Code, *see* 11 U.S.C. § 101(48), is to be construed broadly. *See* 9A Am.Jur.2d Bankruptcy § 544 (1980).

The time of transfer generally is equated with the perfection of the transaction. *See In Re Gurs,* 34 B.R. 755 (Bankr.Cal.1983). Thus, "the transfer should not be considered complete until it is so far perfected that no bona fide purchaser from the debtor-transferor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transfer[ee] therein." 4 Collier on Bankruptcy § 727.02[2] at 727–7 n. 3 (15th ed. 1983); *In Re MacQuown,* 717 F.2d 859 (3d Cir.1983). In *MacQuown,* the court recognized this principle and found that, under Pennsylvania law, a transfer of real property is good against bona fide purchasers etc. when the deed is recorded. *Id.* at 863; Pa.Stat.Ann. tit. 21, § 351 (Purdon 1955).

■ Similarly, in the case *sub judice,* the transfer occurred when the deeds were executed over to defendants on December 22,

---

7. That section provides:
    (c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.
    11 U.S.C. § 548(c).

1982. As the trustees contend, the debtors' property is not considered transferred until there has been a "perfection" which places the property beyond the reach of strangers to the transaction. *See* Brief of Appellees, Document 5 of the Record at 8; 11 U.S.C. § 548(d)(1). *Cf. In Re Gaites,* 466 F.Supp. 248 (M.D.Ga.1979). Objectors cite *In Re Gaites* to support the proposition that transfers did not take place between debtors and defendants in December of 1982. The facts in *Gaites* are distinguishable. The *Gaites* decision involved a series of complex transactions and the court did not hold that a transfer never took place. Instead, the decision in *Gaites* dealt primarily with the doctrine of implied trusts in Georgia and with whether the transfer was for an antecedent debt. Furthermore, the decision in *In Re MacQuown,* provides guidance for when a transfer is deemed complete. Accordingly, the transfers can be set aside pursuant to § 548(a)(1) and the Bankruptcy Judge's decision will be affirmed.[8]

In sum, objectors fail to demonstrate that the Bankruptcy Judge's finding of fraudulent intent was clearly erroneous. Similarly, the court finds that a transfer of the properties occurred in December of 1982, less than one (1) year before the petition in bankruptcy was filed.

An appropriate Order will enter.

---

**8.** An actual intent to hinder, delay, or defraud creditors must be established under § 548 and § 727. *Lovell v. Mixon,* 719 F.2d 1373 (8th Cir.1983). The determination that the transfers were fraudulent under § 548 renders extended discussion concerning the denial of discharge pursuant to § 727(a)(2)(a) unnecessary. Thus, the Bankruptcy Court's denial of the debtors' discharge will be affirmed. *See In Re MacQuown, supra.*