In re Bernard BUTLER and Mary Butler, Debtors.

Bernard BUTLER and Mary Butler, Plaintiffs,

v.

LOMAS AND NETTLETON COMPANY and Secretary of Housing and Urban Development, Defendants.

Bankruptcy No. 86–03101S.

Adv. No. 86–1274S.

United States Bankruptcy Court, E.D. Pennsylvania.

June 18, 1987.

Henry J. Sommer, Philadelphia, Pa., for debtors.

David B. Comroe, Philadelphia, Pa., for defendant Lomas and Nettleton Co.

Edward Sparkman, Philadelphia, Pa., Standing Chapter 13 Trustee.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

A. INTRODUCTION AND PROCEDURAL HISTORY

This case, wherein consumer Debtors seek to set aside a sheriff's sale of their home as a fraudulent conveyance on the basis of 11 U.S.C. §§ 522(h), 522(g)(1), and 548(a)(2), presents a relatively simple issue of whether the Debtors have proven that they failed to receive "reasonably equivalent value" in the "transfer" effected by the sale and a very close issue as to whether the "transfer" effected by the sale was made "within one year before the date of the filing of the petition." Following previous decisions in this district, as opposed to some cases elsewhere which have held that the price brought at a regularly conducted foreclosure sale establishes *per se* "reasonably equivalent value," and finding the value of the Debtors' premises at the time of the sale to be almost twice the fair market value, we hold that "reasonably equivalent value" of the premises was not realized in the sale. Following what appears to be Third Circuit decisional law and our assessment of the equities in favor of the Debtors, we decide that the "transfer" of the Debtors' property was effected at the date of the recordation of the deed and not on the date of the sheriff's sale. Therefore, we render judgment in favor of the Debtors.

The Debtors filed a Petition in bankruptcy under Chapter 13 of Title 11, United States Code, on June 17, 1986. The instant adversarial proceeding, naming as Defendants both LOMAS & NETTLETON COMPANY (hereinafter referred to as "Lomas") and the SECRETARY OF HOUSING AND URBAN DEVELOPMENT (hereinafter referred to as "HUD"), was filed on October 21, 1986. When the matter came before us for trial on February 5, 1987, Counsel for the Plaintiffs and Coun-

sel for Lomas (HUD having not appeared because it apparently had no interest in the matter) recited an oral Stipulation of most relevant facts into the record. The Debtors then called two witnesses, Edward Graham, as an expert witness to attempt to establish the disputed issue of the fair market value of the premises as of the pertinent dates in 1985, and the Wife-Debtor, Mary Butler. Counsel for Lomas cross-examined Mr. Graham carefully, but called no witnesses of his own.

At the end of the hearing, we issued an Order of February 6, 1987, directing that the parties reduce their oral Stipulation to writing on or before February 17, 1987, and establishing a briefing schedule contemplating a Brief by the Debtors, a Brief by Lomas, and Reply Brief by the Debtors on or before March 2, 1987; April 2, 1987; and April 9, 1987, respectively. These deadlines were met, and Lomas also submitted an unsolicited Reply Brief. As we earlier stated in *In re Jungkurth, Jungkurth v. Eastern Financial Services, Inc., et al.*, 74 B.R. 323, 325 – 26 (Bankr.E.D.Pa. 1987), we do not wish to stifle enlightenment, but we must ask that counsel wishing to submit supplemental Briefs not contemplated by our Orders discuss same with opposing counsel and thereafter with the Court before unilaterally altering briefing schedules established by Court Order.

While we are obliged, per Bankruptcy Rule 7052 and Federal Rule of Civil Procedure 52(a), to submit this Opinion in the form of Findings of Fact, Conclusions of Law, and a Discussion, we note that, due to the cooperation of the parties in putting the facts in concise form, we can be concise in reciting our Findings and Conclusions as well.

## B. FINDINGS OF FACT

1. The Debtors, husband and wife, have resided in the premises in issue, located at 1309 North Howard Street, Philadelphia, Pennsylvania 19122 (hereinafter "the premises"), for the past sixteen years.

2. Lomas instituted an Action in Mortgage Foreclosure against the Debtors in reference to the premises in the Court of Common Pleas of Philadelphia County, at December Term, 1984, No. 2126.

3. The Complaint alleged a Principal Debt of $7,871.06, and a Total Amount Due of $9,122.82. Contrary to the Order of this District Court in *Hines, et al. v. Pettit, et al.*, C.A. No. 85–6707 (E.D.Pa., Order dated Oct. 21, 1986) which prohibits entry of judgments for larger amounts than those alleged to be due on the face of the Complaint, a default judgment in the amount of $9,890.14 was entered.

4. Lomas executed on the premises pursuant to its judgment, and a sheriff's sale of the premises was conducted on May 6, 1985, at which no bids were made on the premises. The premises was therefore sold to Lomas, and Lomas was obliged to pay, and did pay, a total sum of $2,644.90, representing the taxes and costs, on June 17, 1985, towards the sheriff's sale.

5. On June 24, 1985, the Sheriff of Philadelphia County signed the deed to consummate the above sheriff's sale, and the deed was recorded that day.

6. The value of the premises, on both May 6, 1985, and June 24, 1985, and at all times between these dates, was $18,000.00. We base this finding on the fact that Mr. Graham's appraisal of the value of the premises in the amount of $18,000.00 on these dates is not rebutted by any contrary evidence presented by Lomas.

7. The testimony of the Wife-Debtor establishes that, as per the Schedules filed in this case and the lack of substantial changes in same in the year between the sale and the filing of the Schedules, the value of the Debtors' non-exempt property (which was nil) did not exceed their debts.

## C. CONCLUSIONS OF LAW

1. The transfer of the title of the premises from the Debtors to Lomas, for purposes of 11 U.S.C. § 548(a)(2), was effected on June 24, 1985, which is within one year of the filing of the Debtors' bankruptcy petition on June 17, 1986.

2. The Debtors realized about fifty-seven (57%) percent of the value of their prem-

ises in the transfer to Lomas, which was less than a "reasonably equivalent value" of their interest in the premises, for purposes of 11 U.S.C. § 548(a)(2)(A).

3. All of the other requirements necessary to satisfy the conditions of 11 U.S.C. §§ 522(h), 522(g)(1), and 548(a)(2) are met here, thus permitting the Debtors to avoid the transfer of the premises to Lomas.

4. The Debtors are entitled to judgment in their favor.

## D. DISCUSSION

The operative provisions of the Bankruptcy Code invoked by the Debtors, 11 U.S.C. §§ 522(h), 522(g)(1), and 548(a)(2), provide as follows:

§ 522(h)

The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under sections 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

§ 522(g)

Notwithstanding sections 550 and 551 of this title, the debtor may exempt under subsection (b) of this section property that the trustee recovers under sections 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property under section (b) of this section if such property had not been transferred, if—

(1)(A) such transfer was not a voluntary transfer of such property by the debtor; and

(B) the debtor did not conceal such property; ...

§ 548(a)

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor— ...

(2)(a) received less than a reasonably equivalent value in exchange for such transfer of obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; ... [or other non-applicable alternatives exist].

Pursuant to these provisions, the Plaintiffs are clearly entitled to stand in the shoes of the trustee in seeking to set aside the sale of the premises, if they can establish that they satisfy the requirements of 11 U.S.C. § 548(a)(2), as the sale of their home was an involuntary transfer, the home was never concealed, and their interest in the home could have been exempted pursuant to 11 U.S.C. § 522(d)(1). *See, e.g., In re Dudley,* 38 B.R. 666, 668–69 (Bankr. M.D.Pa.1984) (per GIBBONS, J.); *In re Smith,* 21 B.R. 345, 349–50 (Bankr.M.D. Fla.1982); and *In re Jones,* 20 B.R. 988, 993 n. 17 (Bankr.E.D.Pa.1982) (per GOLDHABER, CH.J.).

There likewise would appear to be no contest that the Debtors were insolvent at all relevant times, and hence that the requirement of § 548(a)(2)(B)(i) has been met.[1]

There is no denying that a battle rages in some courts as to whether parties seeking to invoke § 548(a)(2)(A) can successfully maintain that a transfer by a sheriff's sale, which has not been established to have

---

**1.** The Debtors, rather carelessly, almost neglected to present proof of this element at trial, attempting to improperly suggest that this Court could take "judicial notice" of their Schedules. Clearly, this request is not within the scope of Federal Rule of Evidence 201(b), and therefore we could not do so. *See In re Aughenbaugh,* 125 F.2d 887 (3d Cir.1942). Fortunately for the Debtors, Counsel for Lomas conveniently (but properly) alerted the Debtors' Counsel to this deficiency at the end of the hearing, whereupon we allowed the Debtors to reopen their case and recall the Wife-Debtor, and she provided testimony to easily satisfy this element, as the Debtors had no non-exempt property, and they had, as might be anticipated, several debts on the date of the transfer. See 11 U.S.C. § 101(31).

been collusive, is not *ipso facto* a sale for "reasonably equivalent value." *See In re Madrid,* 21 B.R. 424, 426–27 (9th Cir. Bankr.App.1982), *aff'd,* 725 F.2d 1197 (9th Cir.1984); *In re Bundles,* 61 B.R. 929, 934–35 (Bankr.S.D.Ind.1986); and *In re Verna,* 58 B.R. 246, 251 (Bankr.S.D.Cal.1986).[2]

■ However, the law of this jurisdiction is well-settled to the contrary. The law of this jurisdiction is that, if it is established that the price realized at a sheriff's foreclosure sale to execute upon property to satisfy a debt is significantly less than the fair market value of the property sold, then the contention that there has been a transfer for less than "reasonably equivalent value" can indeed be made. *See In re Brunell,* 47 B.R. 830, 831 (Bankr.E.D.Pa. 1985) (per TWARDOWSKI, CH.J.), *aff'd,* 76 B.R. 64 (E.D.Pa., 1985); *In re New Yorketown Associates,* 40 B.R. 701, 706 (Bankr. E.D.Pa.1984) (per GOLDHABER, CH.J.); *Jones, supra,* 20 B.R. at 993–94. Most courts elsewhere have reached the same conclusion. *See, e.g., In re Hulm,* 738 F.2d 323, 327 (8th Cir.), *cert. denied sub nom. First Federal Savings & Loan Ass'n v. Hulm,* 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984); *Durrett v. Washington National Insurance Co.,* 621 F.2d 201, 203–04 (5th Cir.1980); *In re Christian,* 48 B.R. 833, 836–37 (D.Colo.1985); *In re Apollo Hollow Metal & Hardware Co.,* 71

B.R. 179, 182–83 (Bankr.W.D.Mo.1987); and *Dudley, supra,* 38 B.R. at 669–70.

We also find, contrary to the facts in *Brunell* and *Dudley,* that the value of the premises sold or transferred here is significantly less than the price realized at the sale. Here, we have virtually undisputed testimony that the premises was worth $18,000.00 at the time of the sale,[3] analogous to the evidence presented in *Jones.* Without deciding whether the courts in *Brunell* and *Dudley* were accurate in their analysis of the comparison of sale price to value,[4] a comparison of the facts there clearly indicates that those courts would concur that, here, the sale price was less than the "reasonably equivalent value" of the Debtors' home. In *Dudley,* the court found the value of the premises at the time of the sale to be $6,500.00, the mortgage indebtedness to be $3,748.08, and taxes and costs incurred by the bank purchasing at the sheriff's sale to be $2,595.59. In *Brunell,* the value of the premises was $31,-000.00, and the mortgage indebtedness was $29,630.83. Here, the value of the premises was $18,000.00, the mortgage balance but $7,871.06, and the taxes and costs but $2,644.90, the sum of which, $10,515.96, is but 57.3 percent of the value of the premises.

In *Jones,* meanwhile, the court held that a sale of a premises worth between $10,-000.00 and $12,000.00 for a price of $5,800.00 (between 48.5 percent and 58 per-

**2.** There is no question, apparently even in the Ninth Circuit, that the 1984 Amendments to the Code adding the phrase "and foreclosure of the debtor's equity of redemption" to the definition of "transfer" in 11 U.S.C. § 101(48) (now § 101(50)) and adding the words "voluntarily or involuntarily" to § 548(a)(2) eliminated reliance on the decision of the Ninth Circuit Court of Appeals in *Madrid,* holding that a foreclosure sale was not a "transfer."

**3.** We acknowledge, but reject, Lomas' efforts to have us disregard the testimony of Mr. Graham. Although we believe that the cross-examination of Mr. Graham by counsel for Lomas weakened that testimony, and reduced its weight, Lomas offered not one shred of testimony to support any conclusion other than that reached by Mr. Graham, i.e., that, on June 24, 1985, the value of the premises was $18,000.00. Therefore, this is the *only* testimony on this issue and, whatever its weight, it outweighs nothing. Since no valu-

ation differing from that of Mr. Graham was produced, we can infer that this testimony was likely to have been accurate.

**4.** We note a line of Pennsylvania Supreme Court cases which indicate that the comparison should be between the sale price and the *total* value of the property sold, not the sale price and the owner's equity. *See Peoples Pittsburgh Trust Co. v. Blickle,* 330 Pa. 398, 199 A. 318 (1938); and *Home Owners Loan Corp. v. Eiden,* 329 Pa. 532, 198 A. 114 (1938). In *Brunell* the court held that the sale price should be added to the bid price, and the sum of these two compared to the market value of the property which is sold, in determining whether the consideration was adequate. We do not agree with this aspect of *Brunell.* Rather, we believe that we either must follow *Blickle* or *Eiden* or, at the least, compare the sale price to the value of the debtor's interest in the property, i.e., the debtor's equity.

cent of the premises' value) was avoidable pursuant to § 548(a)(2). The ratio of mortgage balance plus taxes and costs to sale price here is lower than both the high figure in *Jones* and the 57.7 percent figure which the court in *Durrett* found insufficient.

We therefore conclude, rather easily, that the transfer of the Debtors' premises was indeed for a sum less than the "reasonably equivalent value" of the premises.

■ We believe that the really close question presented by this case is an issue not directly decided by or addressed by any of the cases cited thus far in this Opinion, *i.e.*, is the time of a "transfer" by means of a sheriff's sale, for purposes of § 548(a)(2), to be measured from the date of the sale itself, or from the date when the deed passes to the purchaser at the sale? Resolution of this issue is dispositive of this case, because the sale occurred on May 6, 1985; the deed passed on June 24, 1985; and the Debtors did not file bankruptcy until June 17, 1986, within one year from the passing of the deed, but not within one year from the sheriff's sale.

There are three decisions which persuade us that we must enter a decision in favor of the Debtors, *In re MacQuown*, 717 F.2d 859, 862–63 (3d Cir.1983); *In re Jacobs*, 60 B.R. 811, 815–16 (M.D.Pa.1983) (per NEALON, CH.J.); and *In re Rouse*, 48 B.R. 236, 240 (Bankr.E.D.Pa.1985) (per KING, J.). The issues presented in *MacQuown* and *Jacobs* were very similar. There, in attempting to bring conveyances within the one-year period *contrary* to the arguments of the respective debtors upon suits by creditors and the trustee, respectively, the courts held that the transfers were effected on the dates of perfection by recording, not on the dates of sale. *MacQuown*, 717 F.2d at 863; and *Jacobs*, 60 B.R. at 815. In *Rouse*, the court, again invoking the rule of law against the debtor, held that, although the debtor had no interest which could withstand a motion for relief from the automatic stay in the period between the passing of the deed and the sheriff's sale, the debtor did have an interest protected by the stay, in the following passage:

Legal title to the property does not pass to the purchaser until acknowledgment and delivery of the sheriff's deed. The owner is entitled to possession of the premises until the deed is acknowledged and delivered. 48 B.R. at 240.

*Cf. In re Gurs*, 34 B.R. 755, 756–57 (9th Cir.Bankr.App.1983) ("transfer" occurs only upon perfection of interest); *Christian, supra*, 48 B.R. at 835–86 ("transfer" occurs only when debtor's redemption period expires and deed is issued). *But cf. In re Joing*, 61 B.R. 980, 983 (Bankr.D.Minn. 1986) ("transfer" occurs at date of sale, not date of expiration of redemption period).

This result is also consistent with the reasoning which has been applied in determining when a "transfer" occurs pursuant to the Code provision addressing "preferential transfers," 11 U.S.C. § 547(b)(4). The weight of authority, including local decisions, is that a "transfer" by check occurs only when the check is perfected by its being honored by the drawee bank. *See, e.g., In re American International Airways*, 68 B.R. 326, 335 (Bankr.E.D.Pa. 1986) (per SCHOLL, J.); and *In re Ardmore Sales Co.*, 22 B.R. 911, 913 (Bankr.E. D.Pa.1982) (per GOLDHABER, CH.J.). *See generally*, comment, *Timing of Payment by Check Under § 547 of the Bankruptcy Code*, 7 CARDOZO L.REV. 887, 895–903 (1986). Here, we are thus also persuaded to conclude that a transfer does not occur until it is perfected.

However, we must concede that there is a logical basis for reaching a contrary conclusion in the instant case on this issue. While the passing of the deed after a sheriff's sale of his premises does not divest the judgment debtor of complete legal title, *see Hardenburg v. Beecher*, 104 Pa. 20, 22 (1883); and *Storch v. Carr*, 28 Pa. 135, 138 (1857), there is considerable authority that the passing of the deed from a sheriff's sale, when it occurs, relates back to the date of the sale. *See Hardenburg, supra; Hoyt v. Koons*, 19 Pa. 277, 280 (1852); and *Pavlow v. DiFabio*, 37 D. & C.2d 156, 157 (Dela.Co.C.P.1972). The *MacQuown* and *Jacobs* cases could be distinguished because neither case involved a *sheriff's* sale,

which arguably is the only type of sale where such a relating-back occurs.

However, we reject this reasoning because it appears contrary to the trend of the Pennsylvania legislature and courts to protect the rights of mortgagors. This concern for mortgagors is displayed by the courts of this state in such cases as *Blickle* and *Eiden, supra* page 531 n. 4 (sheriff's sales set aside for inadequate consideration); and by the legislation in the enactment of Act No. 6 of 1974, 41 P.S. § 101, et seq. (mortgagors accorded an unwaivable right to cure mortgage delinquencies); and Act 91 of 1983, 35 P.S. § 1680.401c, et seq. (state loans are provided to protect mortgagors who are faced with foreclosure).

Thus, although appreciating the weight of the contrary position, we nevertheless defer to the analogous decisions of the Court of Appeals in *MacQuown* and the District Court in *Jacobs,* and the equities which cut in favor of the Debtors. The issue is a close one and we are, we believe, rightly moved by the facts that the Debtors have owned this property for sixteen years; that Lomas, like that mortgagee in *Jones,* 20 B.R. at 995, is entitled to retain a lien on the premises in the amount that it "gave value" to the Debtors, which we believe, here, should be in the amount of the principal balance due, plus the taxes and costs expended, or the sum of $10,515.96, pursuant to 11 U.S.C. § 548(c);[5] that the Debtors are represented by most competent and responsible counsel who will undoubtedly prepare a Plan to preserve Lomas' lien and cure the mortgage delinquencies; and that Lomas, the buyer at the sale to foreclose a governmentally-insured mortgage, may lose little, if anything, if the Debtors remain in the home, continue to maintain it, and pay off the mortgage.

We shall effect this decision in an accompanying Order.

### ORDER

AND NOW, this 18th day of June, 1987, after receiving a Stipulation of facts and hearing testimony on disputed facts on February 5, 1987, and upon consideration of the parties' Briefs in this matter, it is hereby ORDERED and DECREED as follows:

1. Judgment is entered in favor of the Plaintiffs, BERNARD BUTLER AND MARY BUTLER, and against the Defendants, LOMAS AND NETTLETON COMPANY and SECRETARY OF HOUSING AND URBAN DEVELOPMENT.

2. The transfer of the property to Defendant LOMAS and NETTLETON COMPANY (hereinafter referred to as "Lomas") on June 24, 1986, is hereby set aside, subject to a lien in the amount of $10,515.96 in favor of Lomas, pursuant to 11 U.S.C. § 548(c).

3. Lomas shall take all necessary steps to effect this Order within thirty (30) days of this Order.

---

5. Neither party addressed the applicability of 11 U.S.C. § 548(c) and the issue of the proper measure of the lien which would attach pursuant to this section in their Briefs. We would therefore entertain a timely Motion pursuant to Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e) if either party believes this computation to be in error. *See In re Campfire Shop, Inc.,* 71 B.R. 521, 523–24 (Bankr.E.D.Pa.1987) (Motion must be served within ten days).