In re Richard S. MacQUOWN, Bankrupt.

DEAN WITTER REYNOLDS,
INC., Appellee,

v.

Richard S. MacQUOWN, Appellant.

No. 83–5116.

United States Court of Appeals,
Third Circuit.

Submitted Pursuant to Third Circuit
Rule 12(6) Aug. 11, 1983.

Decided Sept. 26, 1983.

Paul G. Kachulis, Pittsburgh, Pa., for appellant.

David A. Scott, Thorp, Reed & Armstrong, Pittsburgh, Pa., for appellee.

Before ALDISERT and WEIS, Circuit Judges and RE *, Chief Judge.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In a proceeding addressing a creditor's objection to discharge, the bankruptcy judge ruled that the pertinent date to be used in deciding whether realty was transferred within a year of bankruptcy is the day the deed was recorded, not when it was executed. He also found, and the district court agreed, that the debtor had made the conveyance with intent to defraud credi-

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

tors. We find no reversible error and affirm.

The principal creditor filed a complaint in the bankruptcy court contending that under the terms of section 14(c) of the Bankruptcy Act of 1898 (formerly 11 U.S.C. § 32(c)) debtor should not be discharged. After an evidentiary hearing, the bankruptcy judge accepted the creditor's position and denied the discharge. On appeal, the district court affirmed.

Debtor Richard MacQuown opened a margin account in November 1974 with creditor, the brokerage firm of Dean Witter Reynolds. He traded in Mexican peso futures and suffered severe reversals in 1976. Disputes between MacQuown and the broker over these losses were submitted to arbitration in 1977 and a judgment of approximately $200,000 against debtor was ultimately entered in the federal district court on November 13, 1978. That judgment was affirmed on appeal to this court on September 7, 1979. One week later MacQuown filed his petition for bankruptcy.

The creditor's complaint presented several grounds in support of the denial of discharge, and evidence was presented on all of them. However, the bankruptcy judge based his ruling on only one point: the debtor's transfer of his interest in his home to his wife. The correctness of that ruling is the only issue of substance presented on appeal.[1]

In August 1977, the debtor's wife executed a will leaving her entire estate to her children. In December of that same year, debtor and his wife executed a deed transferring the family residence, which they held as tenants by the entireties, to the wife alone. There was no consideration for the transfer, and the deed was not recorded until June 13, 1979. In the summer of 1979, Mrs. MacQuown was diagnosed as having cancer. She died in December of the same year.

By virtue of the wife's will, the property in question is presently owned by the debtor's children. Debtor still lives in the home, but without a formal lease or any fixed rental obligation. He does, however, pay the taxes, maintenance costs, and utilities associated with the premises.

Creditor contended that debtor transferred the property to his wife with intent to hinder, delay, or defraud his creditors in violation of section 14(c)(4). Debtor responded that creditors had no claim against the entireties' property at the time of the transfer and, therefore, it could not have been made with intent to defraud. He also contended that the property was transferred as of the date of the deed, December 27, 1977, rather than on the day it was recorded in 1979. That being so, argues debtor, the transfer would not have occurred within one year of bankruptcy as required by section 14(c)(4).

The bankruptcy judge found that Dean Witter became a "creditor" in 1976. He then considered whether the critical date for measuring the one-year period of section 14(c)(4) was the day the deed was executed or the day it was recorded. Noting the absence of any controlling case law, the bankruptcy judge analogized the situation to that under section 67(d)(5) of the old Bankruptcy Act (formerly 11 U.S.C. § 107(d)(5)), which provides that a transfer is made when a subsequent bona fide purchaser cannot acquire rights superior to the transferee.

The court recognized that in Pennsylvania an unrecorded deed is effective as between the parties, but as to a judgment creditor and bona fide purchaser, recordation is required. Accordingly, he ruled that the determining factor was the recordation date of the deed at issue here. Since that date fell within a year of bankruptcy, section 14(c)(4) was applicable. He also held that the gratuitous transfer of the property raised a presumption of the intent required by section 14(c)(4), and that debtor did not

---

1. Debtor also asserts that the bankruptcy judge erred in admitting certain evidence and in allowing ex parte contact by creditor. We find these contentions meritless.

sustain his burden of rebutting that presumption.

On appeal, the district court concluded that the factual findings of the bankruptcy court were not clearly erroneous and accepted the holding that the effective date was that of recordation.

■ Looking first to the matter of jurisdiction, we consider whether the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 controls the disposition of this case. The transition provisions of the 1978 Act provide that cases commenced under the 1898 Act "shall be conducted and determined under [the 1898] Act as if [the Reform] Act had not been enacted." Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, title IV § 403(a), 92 Stat. 2683; *see Central Trust Co. v. Official Creditors' Committee of Geiger Enterprises,* 454 U.S. 354, 102 S.Ct. 695, 70 L.Ed.2d 542 (1982). As the Senate Report accompanying the new Act explains, "[C]ases commenced under prior law ... are to proceed, with respect to both substantive and procedural matters, in the same fashion as though [the Reform Act] were not in effect." S.Rep. No. 989, 95th Cong., 2d Sess. 166 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5952. *Accord* H.Rep. No. 595, 95th Cong., 2d Sess. 459 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6414–15.

Most provisions of the Reform Act took effect on October 1, 1979. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, title IV § 402(a), 92 Stat. 2682. Debtor filed his petition for bankruptcy on September 14, 1979 and thus the 1898 Act governs the disposition of the merits of the case at hand. *See In re Cantwell,* 639 F.2d 1050, 1051 n. 1 (3d Cir.1981).

■ That Act also controls our appellate jurisdiction. *See Heller v. Montgomery,* 699 F.2d 399, 400 (7th Cir.1983). Appeals from a judgment denying a discharge have traditionally been viewed as a proceeding in bankruptcy appealable under section 24(a) of the 1898 Act (formerly 11 U.S.C. § 47(a)). *See* 2A COLLIER ON BANKRUPTCY ¶ 24.24 (14th ed. 1978). We conclude that we have jurisdiction of this appeal pursuant to that section. Accordingly, we need not venture into the jurisdictional quagmire created by the ambiguous statutory provisions of the Reform Act and complicated by the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). *See Moxley v. Comer (In re Comer),* 716 F.2d 168 (3d Cir.1983).

■ Moreover, we note that in reviewing the bankruptcy judge's decision under the clearly erroneous test, the district court adopted the correct standard of review, the one applicable under the old Act. *Compare* Bankruptcy Rule 810 ("court shall accept the referee's findings of fact unless they are clearly erroneous") *with* In re Bankruptcy Resolution (W.D.Pa. December 27, 1982) (order adopting interim reference rule of Judicial Conference; Rule (e)(2)(B): district judge "need give no deference to findings of bankruptcy judge").

■ We turn then to the central question of this appeal, namely, whether the date on the deed or the subsequent date of recordation is the pertinent one in determining the applicability of the exception to a discharge in section 14(c)(4). The statute itself is silent on the matter and speaks only of when the bankrupt has at any time "subsequent to the first day of the twelve months immediately preceding the filing of the petition in bankruptcy, transferred ... any of his property with intent to hinder, delay, or defraud his creditors." Similar language appears in section 727(a)(2) of the Bankruptcy Reform Act, so the issue presented here is of more than historical interest.

There is a dearth of case law on the question when a transfer is complete for purposes of section 14(c)(4). COLLIER ON BANKRUPTCY cites only two aged district court cases, *In re Plank,* 289 F. 900 (D.Mont. 1923) and *In re McKane,* 155 F. 674 (E.D.N.

Y.1907), that suggest a split of authority.[2] *Plank* is a cryptic, three-paragraph memorandum in a situation where the bankrupt conveyed property to his wife by a deed dated May 23, 1921 but not recorded until a year later. Rejecting an analogy to the sections of the Act pertaining to acts of bankruptcy and preferences because the discharge statute did not contain similar language, the court ruled that the date of the deed and not recordation controlled. The *Plank* court did not cite to *McKane*, which referred to those statutory provisions and suggested that if the conveyance were recorded within the specified period before bankruptcy and the requisite intent were present, a discharge would be denied.

Neither of these cases is binding on us, but we think the *McKane* view is better. We agree with the bankruptcy judge in this case in his analogy to the definition of transfer in section 67(d)(5) of the Bankruptcy Act and his conclusion that a transfer is complete for purposes of section 14(c)(4) when it is good against bona fide purchasers.[3]

Under Pennsylvania law, a transfer of real property is good as against a subsequent bona fide purchaser, mortgagee or judgment holder when the deed is recorded. Pa.Stat.Ann. tit. 21, § 351 (Purdon 1955). Accordingly, it was the June 13, 1979 recording date rather than the deed date that was the critical event in the case at hand, and that date was within the twelve month period prescribed by section 14(c)(4).

■ As a practical matter, an additional advantage to using the recording date, as opposed to the inter se transfer date, is that it eliminates most disputes about the effective date. The record in this case can be used to illustrate the potential problem associated with an actual date of transfer test. Documentary evidence established that the deed was signed and acknowledged by a notary public on December 27, 1977, but there is no testimony suggesting when, if ever, the deed was delivered to the wife. For all that the record shows, she may never have received the document so as to complete the transaction.

In short, the potential for controversy exists where the actual date of transfer is dispositive because the issue ultimately turns on credibility. In contrast, when the recording date is used there is little likelihood of dispute because the date is a matter of public record.

■ Having decided the appropriate event on which the discharge hinged, the bankruptcy judge next looked to the matter of intent. He followed a number of cases holding that the gratuitous transfer of valuable property raises a presumption of the intent necessary to bar discharge. *See City National Bank v. Bateman (In re Bateman),* 646 F.2d 1220, 1222 (8th Cir.1981); *Rothschild v. Lincoln Rochester Trust Co.,* 212 F.2d 584, 585 (2d Cir.1954); 1A COLLIER ON BANKRUPTCY ¶ 14.47 at 1411–12 (14th ed. 1978); *cf. In re Pioch,* 235 F.2d 903 (3d Cir.1956). The debtor's intent was further evidenced by his continued residence in the house, and payment of the property taxes and maintenance expenses. The indication was that the parties intended to conduct "business as usual." The transaction could properly be viewed as designed for the sole purpose of placing the debtor's interest in the property beyond the reach of his creditors at a time when the Bankruptcy Act proscribed such action.

> "The transfer should not be considered complete until it is so far perfected that no bona fide purchaser from the debtor-transferor and no creditor could thereafter have acquired any rights in the property so transferred superior to the rights of the transfer[ee] therein."
> *See also* 1A COLLIER ON BANKRUPTCY ¶ 14.46 at 1410 n. 10 (14th ed. 1978) (same language applied to the 1898 Act).

---

**2.** A similar split has occurred in the interpretation by bankruptcy judges of the parallel provision in section 727(a) of the Bankruptcy Reform Act. *Compare Baltic Linen Co. v. Rubin (In re Rubin),* 12 B.R. 436, 439 n. 2 (Bkrtcy.S.D.N.Y.1981) *with First National Bank and Trust Co. v. Shreves (In re Kock),* 20 B.R. 453, 454 (Bkrtcy.D.Neb.1982).

**3.** 4 COLLIER ON BANKRUPTCY ¶ 727.02[2] at 727–7 n. 3 (15th ed. 1983) takes the same view with respect to the Bankruptcy Reform Act.

Finding no reversible error in the points raised by the appellant, we will affirm the judgment of the district court.