87 F.3d 311
 Bankr. L. Rep. P 76,998, 96 Cal. Daily Op. Serv. 4447,
96 Daily Journal D.A.R. 7202
In re Theodore Steven ROOSEVELT, Debtor.
FINALCO, INC., Appellant,
v.
Theodore Steven ROOSEVELT, Appellee.
 No. 95-55160.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 10, 1996.
Decided June 20, 1996.
 
 Russell H. Rapoport, Plotkin, Rapoport & Nahmias, Encino, California, for appellant.
 Philip Holmsey, Knapp, Petersen & Clarke, Glendale, California, for appellee.
 Appeal from the Ninth Circuit Bankruptcy Appellate Panel, Brandt, Hagan, and Volinn, Judges, Presiding. BAP No. CC-93-02221-VhB.
 Before: HALL, O'SCANNLAIN, and KLEINFELD, Circuit Judges.
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 We are asked to decide when a transfer is to be deemed "made" for the purposes of 11 U.S.C. § 727(a)(2), which denies discharge to a debtor who transfers property with the "intent to hinder, delay, or defraud" within one year of filing his petition in Bankruptcy Court. We hold that a transfer is "made" once it is effective as between the parties to the transfer.
 
 I.
 
 2
 Steven and Judy Roosevelt, a married couple, purchased a house on Green Oak Lane in Glendora, California (hereinafter "Glendora property") on August 9, 1984, and took title as joint tenants. On June 10, 1989, when the Roosevelts were having marital difficulties, they signed and executed a Marital Agreement. The Agreement divided all of the couple's community property and specifically provided that the Glendora property would be transmuted into Judy's separate property. The Bankruptcy Appellate Panel determined that Steven made this transfer with the "intent to hinder, delay, or defraud" his creditors.
 
 
 3
 Notwithstanding Steven's June 1989 transfer of his interest in the Glendora property, he joined Judy in executing two deeds of trust on the property on December 18, 1989-the first in favor of Frances Miles in exchange for $56,000 and the second in favor of Raymond Jensen in exchange for $56,000. On March 13, 1990, Steven and Judy filed a homestead declaration, thereby protecting a portion of their equity in the Glendora property from creditors.[1] On April 14, 1990, Steven quitclaimed his interest in the Glendora property to Judy and she immediately recorded the quitclaim deed.
 
 
 4
 In March 1990, Finalco Corp. sued Judy and Steven in an unrelated action and was awarded a $150,000 judgment against Steven. Steven filed for Chapter 7 bankruptcy on November 9, 1990. Finalco instituted an adversary proceeding contesting Steven's discharge under § 727(a)(2) on the ground that he transferred the Glendora property within one year of his petition for bankruptcy with the "intent to hinder, delay, or defraud" his creditors. Specifically, Finalco argued that: (1) the June 1989 Marital Agreement was ineffective under California law (so that Steven did not actually transfer any interest in the Glendora property until he executed the December 1989 deeds of trust); (2) even if the Marital Agreement was a valid transfer, such a transfer is not deemed "made" under § 727(a)(2) until it is recorded (so that the transfer of the property under the Marital Agreement was not "made" until Judy recorded the quitclaim deed in April 1990); and (3) even if § 727(a)(2) deemed a transfer "made" once the Marital Agreement was executed, Steven nevertheless retained an interest in the Glendora property which he subsequently transferred within § 727(a)(2)'s one-year reach-back period.
 
 
 5
 On October 11, 1993, the Bankruptcy Court rejected Finalco's arguments, denied its motion, and discharged Steven. It ruled that although Steven had the requisite intent to defraud, he had transferred the property to Judy on June 10, 1989--more than one year before he filed his November 9, 1990 Chapter 7 petition. The Bankruptcy Appellate Panel of the Ninth Circuit affirmed. This timely appeal followed.
 
 
 6
 We have jurisdiction over an appeal from the Bankruptcy Appellate Panel under 28 U.S.C. § 158(d). On such appeals, we conduct an independent review of the Bankruptcy Court's decision. In re Pace, 67 F.3d 187, 191 (9th Cir.1995). We review a denial of discharge for "gross abuse of discretion." See In re Cox, 904 F.2d 1399, 1401 (9th Cir.1990) (citations and internal quotations omitted) ("In the context of discharges we have applied a more deferential standard.... [W]e disturb [discharge decisions] only if we find a gross abuse of discretion."); Shaver v. Shaver, 736 F.2d 1314, 1316 (9th Cir.1984) (same).[2]
 
 II.
 
 7
 Finalco first argues that the 1989 Marital Agreement did not transfer the Glendora property from Steven to Judy. If this were true, our review would end and we would be compelled to reverse because Steven would not have transferred the property until he executed the deeds of trust in December 1989-a transfer well within § 727(a)(2)'s one-year reach-back period.
 
 
 8
 Because the validity of the Marital Agreement determines the extent of Steven's rights in the Glendora property, and because we look to state law in determining property rights, we must use state law to evaluate the validity of the Agreement. See Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); In re Harrell, 73 F.3d 218, 219 (9th Cir.1996) (citation omitted) ("Since the Bankruptcy Code itself does not determine the existence and scope of a debtor's interest in property, these threshold issues are properly resolved by reference to state law."). Under California law, a married person may by agreement transmute an asset in which he has a community property interest into the separate property of his spouse. Cal. Fam.Code § 850(a).[3] The transmutation is valid between the spouses as long as it is "made in writing by an express declaration that is made, joined in, consented to, or accepted by the spouse whose interest in the property is adversely affected." Cal. Fam.Code § 852(a) (formerly Cal. Civ.Code § 5110.370).[4] An "express declaration" is one which "contains language which expressly states that the characterization or ownership of the property is being changed." In re Estate of MacDonald, 51 Cal.3d 262, 272, 272 Cal.Rptr. 153, 160, 794 P.2d 911, 918 (1990). The agreement need not use the word "transmutation" or "separate property" or "community property." Id. at 273, 272 Cal.Rptr. at 161, 794 P.2d at 919.
 
 
 9
 Under these standards, the Marital Agreement was a valid transmutation.[5] Paragraphs 5(a) and 5(b) of the Agreement stated that both Steven and Judy had an interest in the Glendora property. Section 7(b) then provided:
 
 
 10
 STEVEN and JUDY agree that all property set forth in Exhibit D and any property hereafter acquired by JUDY during the marriage by any means including but not limited to purchase, gift, bequest, devise, or descent shall be and remain her separate property.
 
 
 11
 Marital Agreement, p 7(b) (emphasis added). Exhibit D listed the Glendora property. Thus, the Agreement acknowledged that Steven had an interest in the Glendora property and then declared the property to be Judy's separate property. The Agreement "contains language expressly stating that the ownership of the property is being changed" and was therefore a valid transfer of the Glendora property as between Steven and Judy.[6]
 
 III.
 
 12
 Finalco contends that, even if the Marital Agreement was valid between Steven and Judy, that discharge was still improperly denied because § 727(a)(2) does not deem a transfer "made" until it is recorded--which in this case was within one year of when Steven filed his bankruptcy petition. The question of when a transfer is "made" is a question of federal law, subject to our de novo review. In re Schuman, 81 B.R. 583, 585 (9th Cir.BAP1987) (citation omitted) ("When a transfer occurs within the meaning of the Bankruptcy Code is a question of law and subject to de novo review."); see In re MacQuown, 717 F.2d 859, 862-63 (3d Cir.1983) (deciding this issue as a matter of federal law before turning to state law to examine when a transfer is valid under state law); In re Roy, 42 B.R. 102, 104-05 (Bankr.S.D.Fla.1984) (same).[7]
 
 
 13
 We start, as always, with the plain language of the statute. Section 727(a)(2) provides that:
 
 
 14
 The court shall grant the debtor a discharge, unless ... the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed ... property of the debtor, within one year before the date of the filing of the petition....
 
 
 15
 11 U.S.C. § 727(a)(2)(A). Nowhere does the statute define when a transfer is "made." See Matter of Kock, 20 B.R. 453, 454 (Bankr.D.Neb.1982) ("No definition of when a transfer is deemed to have occurred is contained in § 727."). Compare 11 U.S.C. § 548(d)(1) (stating that a transfer is "made" when it is valid against a bona fide purchaser for purposes of the fraudulent transfer provision).
 
 
 16
 Nor does § 727(a)(2)'s legislative history clarify the statute's silence. While Congress has expressly specified when a transfer is to be deemed "made" for other provisions of the Bankruptcy Code,[8] it failed to do so for the provision governing the denial of discharge. See Amendments to Bankruptcy Act of 1898, ch. 487, § 4, 32 Stat. at 798 (designating as a new ground for denying discharge the transfer of property with the intent to hinder, delay, or defraud--in § 14(c)(4)--without defining when a transfer was deemed "made").[9] Both the text and legislative history of this statute indicate that Congress left this decision to the courts. In this absence of Congressional guidance, courts have responded with two different timing rules. The first rule, which Finalco urges us to adopt, deems a transfer "made" under § 727(a)(2) only when it is valid as against bona fide purchasers ("BFPs"). See In re MacQuown, 717 F.2d at 863 (footnote omitted) ("[A] transfer is complete for purposes of section 14(c)(4) [§ 727(a)(2)'s substantively identical predecessor statute] when it is good against bona fide purchasers."); In re Roy, 42 B.R. at 104 (same); In re McKane, 155 F. 674, 676 (E.D.N.Y.1907) (same). In California, a transfer of real property is valid against bona fide purchasers when it is recorded. See, e.g., Cal. Civ.Code § 1214 ("Every conveyance of real property ... is void as against any subsequent purchaser or mortgagee of the same property ... in good faith and for a valuable consideration, whose conveyance is first duly recorded ... unless the conveyance shall have been duly recorded prior to the record of notice of action."). Thus, this rule--which we shall call the "BFP rule"--effectively provides that a transfer is not "made" under § 727(a)(2) until the instrument of transfer is recorded.
 
 
 17
 The second rule, which the BAP adopted here, and which Steven urges us to adopt, deems a transfer "made" for the purposes of § 727(a)(2) once it is effective between the parties to the transfer, whether or not it is valid as against bona fide purchasers. See Matter of Kock, 20 B.R. at 454 ("[A] 'transfer' for the purpose of § 727(a)(2) occurs when, in this case, the mortgage is given by the debtors and not when it is perfected by the mortgagee by filing in the Register of Deeds' office."); In re Plank, 289 F. 900 (D.Mont.1923) (finding that a transfer is "made" on the date of the deed's execution); In re Munden, 8 B.R. 142, 144 (Bankr.E.D.Va.1981) (holding that a debtor's transfer of his house is "made" on the date of the deed, so that the debtor's failure to list the house as an asset does not provide grounds to revoke his discharge for fraud). Because California deems a transfer of real property valid between the parties on the date the deed or agreement is delivered, see Cal. Civ.Code § 1054 ("A grant takes effect ... only upon its delivery by the grantor."), and because delivery is presumed to be made on the date of the deed, see Cal. Civ.Code § 1055 ("A grant duly executed is presumed to have been delivered at its date."), this rule--which we shall call the "party rule"--effectively provides that a transfer is "made" under § 727(a)(2) on the date the agreement or deed of transfer is executed.
 
 
 18
 Our Circuit has not yet adopted either rule, so we are squarely faced with an issue of first impression. Finalco proffers three reasons why we should adopt the BFP rule. It first observes that both § 727(a)(2) and § 548 of the Code involve situations where the debtor has transferred his property with the intent to hinder, delay, or defraud his creditors. Compare 11 U.S.C. § 727(a)(2) with 11 U.S.C. § 548(a)(1).[10] Because, Finalco argues, § 548 defines the time of transfer as the time when the transfer is recorded, see 11 U.S.C. § 548(d)(1),[11] section 727(a)(2) should do the same.
 
 
 19
 Steven responds that drawing an analogy between these two provisions solely on the basis of their similar language is a mistake because they serve different purposes that require different timing rules. Section 727(a)(2), he notes, "center[s] on the debtor's wrongdoing in or in connection with the bankruptcy case." S.Rep. No. 989, 95th Cong., 2d Sess. 98 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5884. Section 548, he contrasts, gives the bankruptcy trustee the power to avoid transactions and bring them back into the debtor's estate, a power that is not limited to situations where the debtor acted with the intent to defraud. See 11 U.S.C. § 548(a)(2) (allowing avoidance of transfers because they were made for less than "reasonably equivalent value").[12] Thus, he argues, § 548 seems more concerned with protecting creditors; because recording statutes share the same purpose, it makes sense that § 548 should use the date of recording as the means of accomplishing its purpose. Section 727(a)(2), on the other hand:
 
 
 20
 premises denial of discharge on certain conduct of the debtor in relation to his assets and creditors if done with "intent to hinder, delay or defraud." Thus, one of the principal points of focus in litigation involving that sub-section involves certain conduct coupled with an appropriate guilty state of mind. That suggests to me that the "transfer" which is contemplated by § 727(a)(2) focuses on the time of the debtor's activity and not when the activity is somehow fully-insulated from the claims of other creditors.
 
 
 21
 Matter of Kock, 20 B.R. at 454. We agree with Steven that the analogy Finalco draws between § 548 and § 727(a)(2) is inapt; we further find the "party rule" to be more consistent with the purposes animating § 727(a)(2) than the "BFP rule."
 
 
 22
 Finalco argues that, even if we are not persuaded to adopt the BFP rule for § 727(a)(2) because it is used in § 548, we should nevertheless adopt it because it is more practical. By focusing on when a transfer is recorded--an event with a verifiable paper trial--courts can avoid evidentiary disputes over when deeds were executed or agreements signed. In re MacQuown, 717 F.2d at 863 ("[A]n additional advantage to using the recording date, as opposed to the inter se transfer date, is that it eliminates most disputes about the effective date."); see also 4 Collier on Bankruptcy p 727.02, at 727-14 (15th ed. 1996) ("[The BFP rule] would avoid any controversy concerning exactly when the transfer occurred, since the date of recordation is a matter of public record."). While we recognize that this is a valid concern, we note that it is the function of the lower courts to determine facts and assess the credibility of witnesses. See United States v. Chischilly, 30 F.3d 1144, 1150 (9th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 946, 130 L.Ed.2d 890 (1995) (recognizing the "fact-finding and credibility-weighing functions" of the district court). We do not believe that relieving the lower courts of a function which they are already competent to perform is a reason unto itself to adopt the "BFP rule."
 
 
 23
 Finally, Finalco opines that the BFP rule would encourage debtors to disclose their transfers, thereby preventing a dishonest debtor from concealing a fraudulent transfer for more than a year in order to avoid § 727(a)(2)'s one-year reachback. Finalco's concern is misplaced. Section 727(a)(2) already denies discharge to a debtor who conceals his property with the intent to hinder, delay, or defraud. See § 727(a)(2)(A). Thus, courts following the "party rule" would not discharge a debtor who failed to record if he did so for the purpose of concealing the transfer. See 4 Collier p 727.02, at 727-14, -15 ("Under [the "party rule"], it must be recognized that some failures to record transfers are intentional and are in the nature of continuing concealments, in which case the date of recordation should be used to determine whether the transfer occurred during the one-year period.").[13]
 
 
 24
 Steven offers two reasons why we should adopt the "party rule." He first observes that courts are to construe "the provisions denying a discharge to a debtor ... liberally in favor of the debtor and strictly against the creditor." In re Weldon, 184 B.R. 710, 712 (Bankr.D.S.C.1995); see also In re Devers, 759 F.2d at 754 (same). Of the two rules that might clarify § 727(a)(2)'s ambiguous language, the party rule--which protects those debtors who transfer but fail to record as well as those who record--is the one that enables a greater number of debtors to be discharged. Steven also points out a second drawback to the "BFP rule": It makes a debtor who was otherwise eligible for discharge (because his fraudulent transfer of property was made outside the one-year reachback period) suddenly ineligible simply because his transferee, over whom he had no control, decided to record during the one-year period. This, he concludes, unfairly extends the reachback period.
 
 
 25
 While we are not terribly moved by Steven's second argument, we believe that § 727(a)(2) focuses on the debtor's wrongdoing and that the "party rule" is more tailored to serving that goal than the "BFP rule."[14] Thus, a transfer under § 727(a)(2) is "made" at the time it is valid between the parties to that transfer, irrespective of whether it is valid as against BFPs. The Marital Agreement was valid as between Steven and Judy on June 10, 1989-a date outside § 727(a)(2)'s one-year reachback period. Accordingly, we find no error in the Bankruptcy Court's grant of discharge.
 
 IV.
 
 26
 Finalco argues that it should prevail even if Steven transferred the Glendora property more than one year before he filed his bankruptcy petition because Steven retained an interest in the Glendora property when he executed the Martial Agreement; that interest, Finalco asserts, is what Steven transferred when he executed the two deeds of trust in December 1989, when he filed a homestead declaration in March 1990, and when he executed the quitclaim deed in April 1990. Because these acts took place within the one-year reachback period, Finalco concludes, Steven's fraudulent transfer of this retained interest warrants a denial of discharge.
 
 
 27
 We cannot agree. Steven certainly did not retain any interest in the property through the Marital Agreement. Paragraph 10 stated that:
 
 
 28
 STEVEN and JUDY agree that each party waives and relinquishes, to the fullest extent lawfully possible, all right, title, claim, lien or interest ... in the other's separate property ...
 
 
 29
 The deeds and declarations Steven subsequently executed also do not support Finalco's contention that Steven retained any interest in the property. The quitclaim deed executed in April 1990, which by its very definition can only convey whatever interest the grantor has in property (including no interest), is not inconsistent with Steven's prior surrender of his interest in the Glendora property. Nor did Steven, via the execution of the deeds of trust or filing of the homestead declaration, take back any interest in the property; even if we somehow construed these documents as an attempted re-transmutation of the Glendora property back into community property, the attempt failed because neither document included language "expressly stat[ing] that the characterization or ownership of the property is being changed." In re Estate of MacDonald, 51 Cal.3d at 272, 272 Cal.Rptr. at 160, 794 P.2d at 918. As such, they would have been invalid transmutations. Id.
 
 
 30
 Thus, the only possible interest that Steven could have retained in the Glendora property is one that arises automatically in every California real property transaction: A continuing ability to deal with the property in bad faith, and pit subsequent purchasers against one another. Although, under California law, a conveyance of real estate is valid between the grantor and grantee even if unrecorded, see Cal. Civ.Code § 1217, that conveyance is void as against subsequent bona fide purchasers who record before the original grantee does. See Cal. Civ.Code § 1214. Thus, if a grantor conveys real estate and the grantee does not record the transfer, the grantor retains the ability to reconvey the real estate to a bona fide purchaser, who can defeat the initial grantee's interest if she records before the grantee does. This is the interest that Finalco asserts that Steven retained after he executed but did not record the Marital Agreement.
 
 
 31
 Whether or not Steven's ability to give a subsequent bona fide purchaser the right to defeat the initial grantee's interest may be an "interest," it must also be an interest in property for it to be subject to a "transfer" under the Bankruptcy Code. Section 101(54) defines a transfer as:
 
 
 32
 every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption.
 
 
 33
 11 U.S.C. § 101(54) (emphasis added). Although this definition is to be construed broadly, In re FBN Food Services, Inc., 185 B.R. 265, 272 (N.D.Ill.1995), aff'd, 82 F.3d 1387 (7th Cir.1996), the statute clearly requires that an interest in property be conveyed. See In re Lemley Estate Business Trust, 65 B.R. 185, 189 (Bankr.N.D.Tex.1986) ("[A]ny transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control constitute interests in property.") (emphasis added).
 
 
 34
 Whether a property interest exists is a matter of state law. See In re Harrell, 73 F.3d at 219. Under California law, a person has an interest in property if he has the right to possess and use it to the exclusion of others. Cal. Civ.Code § 654 ("The ownership of a thing is the right of one or more persons to possess and use it to the exclusion of others. In this Code, the thing of which there may be ownership is called property."). Here, Steven himself has no right to the exclusive possession and use of property he gave away twice-he only has the ability to convey to a subsequent bona fide purchaser the "right to possess and use." Thus, Steven's ability is not a property interest as it is defined by statute.
 
 
 35
 Moreover, that this so-called "interest" exists at all is a quirk of the recording statutes themselves. These statutes are designed to assign priorities among competing stakeholders in a piece of property. They are not designed to create a property interest in a dishonest grantor who can continue to give away the same piece of property until one of his buyers records the transaction. Thus, as a matter of policy as well, we reject Finalco's argument that Steven retained a property interest in the Glendora property after he executed the Marital Agreement.
 
 V.
 
 36
 For the foregoing reasons, we AFFIRM the decision of the Bankruptcy Appellate Panel granting Steven a discharge of his debts.
 
 
 
 [1]
 See Cal.Civ.Proc.Code §§ 704.710 et seq
 
 
 [2]
 While some cases review the denial of discharge under a purportedly different standard--reviewing findings of fact for clear error and reviewing conclusions of law de novo, see, e.g., In re Devers, 759 F.2d 751, 753 (9th Cir.1985)--this standard is substantively identical to the "gross abuse of discretion" standard. See In re Cox, 904 F.2d at 1401 (citation omitted) (reciting "gross abuse" rule and then stating that "[w]e must defer to the bankruptcy court's conclusion that the discharge should be denied unless its factual findings are clearly erroneous or it applies the incorrect legal standard."). We therefore hold that these two standards are one in the same
 
 
 [3]
 "Subject to Sections 851 to 853, inclusive, married persons may by agreement or transfer, with or without consideration ... [t]ransmute community property to separate property of either spouse." Cal. Fam.Code § 850(a)
 
 
 [4]
 While a transmutation of real property is not valid as against third parties until it is recorded, see Cal. Fam.Code § 852(b), the validity of the Marital Agreement as against third parties is irrelevant to Finalco's contention that the Agreement is invalid between Steven and Judy
 
 
 [5]
 It is unclear whether a transmutation of real property must satisfy both the specific requirements for transmutations and the more general requirements for transfers of real property
 Under California law, a transfer of real property is valid only if: (1) the grantor signs the instrument conveying the property, see Cal. Civ.Code § 1091 ("An estate in real property ... can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same ..."); and (2) the instrument is delivered to the grantee, see Cal. Civ.Code § 1054 ("A grant takes effect, so as to vest the interest intended to be transferred, only upon its delivery by the grantor."). Because Fam.Code § 852 already requires a writing "made, joined in, consented to, or accepted by the [grantor spouse]," the real property rules in effect add only other requirement to the transmutation rules--delivery.
 Even if we assume that the delivery requirement applies, we believe it was satisfied in this case despite the record's silence as to whether the Marital Agreement was actually delivered to Judy. Delivery may be presumed where, as here, no conflicting evidence exists. See Cal. Civ.Code § 1055 ("A grant duly executed is presumed to have been delivered at its date."). Alternatively, an instrument is deemed constructively delivered if the grantor so intended. See Cal. Civ.Code § 1059 (permitting constructive delivery if the instrument "is, by the agreement of the parties at the time of execution, understood to be delivered ..."); see also McCarthy v. McCarthy, 82 Cal.App.2d 166, 168, 185 P.2d 821 (1947). Here, the parties provided that the Agreement itself could be recorded, an act that would be meaningless unless Steven intended the Agreement to have immediate effect. See Marital Agreement, p 17 ("This Agreement ... may be recorded at any time ... in any place ... authorized by law for the recording of documents affecting title to or ownership status of property ..."); see also Bankruptcy Court Findings of Fact and Conclusions of Law, at 3 ("The MARITAL AGREEMENT was intended to be an instrument of conveyance ...").
 
 
 [6]
 That Steven lived in the house after its transmutation is irrelevant. See Ogg v. Gunderson, 74 Cal.App.2d 384, 387, 168 P.2d 793 (1946) ("The validity of a deed is not necessarily impaired by the fact that the grantor after delivery of the deed continued to exercise control over the realty ... The primary test is whether the grantor intended to make a present transfer ...")
 
 
 [7]
 A few courts have erroneously looked to state law to see when a transfer is valid against third parties without first deciding the previous question of what type of validity--as between the parties or as against bona fide purchasers--is required by federal law. See, e.g., In re Ingersoll, 124 B.R. 116, 121 (M.D.Fla.1991) (citing state law that a transfer is effective against third parties once it is recorded, but never discussing why a transfer is "made" only if it is effective against third parties instead of being "made" when it is effective between the parties to the transfer); In re Gonzalez, 92 B.R. 960, 961-62 (Bankr.S.D.Fla.1988) (same); In re Ford, 53 B.R. 444, 447 (W.D.Va.1984), aff'd sub nom. Ford v. Poston, 773 F.2d 52 (4th Cir.1985) (same)
 
 
 [8]
 See Amendments to Bankruptcy Act of 1898, ch. 487, § 13, 32 Stat. 797, 799-800 (1903) (deeming a transfer "made" at the time it was recorded for the purposes of preferential transfers); Bankruptcy Act of 1938, Amendments, ch. 575, § 67(d)(5), 52 Stat. 840, 878 (1938) (deeming a transfer "made" at the time it was recorded for the purposes of fraudulent transfers)
 
 
 [9]
 We will not trace the language in § 14(c)(4) to § 3(a)(1) of the Bankruptcy Act of 1898, because § 3(a)(1) was wholly unrelated to denials of discharge. See Bankruptcy Act of 1898, ch. 541, § 3(a), 30 Stat. 544, 546 (1898). We do not believe that the similarity of the words in §§ 3(a)(1) and 14(c)(4) can trump the dissimilarity of the purposes those words were attempting to accomplish: Section 3(a)(1) defined the grounds for involuntary bankruptcy and § 14(c)(4) defined the grounds for denial of discharge
 
 
 [10]
 In relevant part, § 548(a)(1) provides: "The trustee may avoid any transfer of an interest of the debtor in property ... that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntary ... made such transfer ... with actual intent to hinder, delay, or defraud ..." Id
 
 
 [11]
 Section 548(d)(1) states:
 For the purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.
 11 U.S.C. § 548(d)(1).
 
 
 [12]
 We recognize that serving one of these two goals often advances the other. A denial of discharge, even when aimed at punishing the debtor, has the effect of protecting creditors. By the same token, some of the trustee's avoidance powers under § 548 are invoked by the debtor's wrongdoing. But see 11 U.S.C. § 548(a)(2). We are, however, more concerned with the primary purposes of the two statutes, not their incidental effects
 
 
 [13]
 Concealment is not an issue in this case, as it was never argued to the Bankruptcy Court
 
 
 [14]
 Finalco argues that this holding will create a split in the federal Circuit courts. The Third Circuit purported to hold, in MacQuown, 717 F.2d at 863, that a transfer of property under § 14(c)(4) was "made" when the transfer was recorded. The parties dispute whether this "holding" is dicta. We need not resolve this dispute, however; even if MacQuown 's holding is not dicta, we have recognized that we will not "create a direct conflict with other circuits" "absent a strong reason to do so." United States v. Chavez-Vernaza, 844 F.2d 1368, 1374 (9th Cir.1987) (citing United States v. Larm, 824 F.2d 780, 784 (9th Cir.1987), cert. denied, 484 U.S. 1078, 108 S.Ct. 1057, 98 L.Ed.2d 1019 (1988)). We believe that the reasons we have cited in the text of our opinion are sufficiently strong to justify our departure from the course plotted by our sister Circuit