### NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

In re:                              )     BAP No.   AZ-17-1141-BLKu
                                    )
EDWARD D. FITZHUGH,                 )     Bk. No.   2:13-bk-09235-PS
                                    )
              Debtor.               )     Adv. No.  2:15-ap-00101-PS
_____)
                                    )
EDWARD D. FITZHUGH,                 )
                                    )
              Appellant,            )
                                    )
v.                                  )     **M E M O R A N D U M**[1]
                                    )
DAVID A. BIRDSELL, Chapter 7        )
Trustee,                            )
                                    )
              Appellee.             )
_____)

Argued and Submitted on February 23, 2018,
at Phoenix, Arizona

Filed - April 13, 2018

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Paul Sala, Bankruptcy Judge, Presiding

Appearances:     Appellant Edward D. Fitzhugh argued pro se; Terry
                 A. Dake of Terry A. Dake, Ltd. argued for appellee
                 David A. Birdsell, Chapter 7 Trustee.

Before:   BRAND, LAFFERTY and KURTZ, Bankruptcy Judges.

---

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Appellant Edward D. Fitzhugh appeals an order revoking his chapter 7[2] discharge under § 727(d)(1) and (d)(2). Because the bankruptcy court applied an incorrect standard of law, we VACATE and REMAND the order revoking discharge. However, we AFFIRM the court's order denying Fitzhugh's motion to continue trial and to extend discovery deadlines.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[3]

**A.    Events leading to the discharge revocation complaint**

Fitzhugh, a personal injury lawyer, filed his chapter 7 bankruptcy case on May 30, 2013. David A. Birdsell was appointed as chapter 7 trustee. Fitzhugh utilized a document preparer to assist him in preparing his bankruptcy petition. He maintains that the preparer made numerous mistakes in his petition.

Fitzhugh did not disclose in his initial schedules or statement of financial affairs that he was owed any money by his clients, or that he had any pending cases in which he might receive or be entitled to receive a contingency fee. He also did not disclose any ownership interest in any corporations or LLCs.

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[3] Fitzhugh failed to file any record other than the relevant transcripts. We could summarily affirm on that basis. Ehrenberg v. Cal. St. Univ. (In re Beachport Entm't), 396 F.3d 1083, 1086 (9th Cir. 2005). However, considering the gravity of the matter and that the bankruptcy court applied an incorrect standard of law to revoke Fitzhugh's discharge, we will review the merits of this appeal. To do that, we had to review documents on the bankruptcy court's electronic docket, of which we take judicial notice. See Franklin High Yield Tax-Free Income Fund v. City of Stockton, Cal. (In re City of Stockton, Cal.), 542 B.R. 261, 265 n.2 (9th Cir. BAP 2015).

In Item 4 of his SOFA, Fitzhugh did not disclose any lawsuits in which he was the plaintiff.

The bar date for objecting to Fitzhugh's discharge was September 3, 2013.  No timely objections being filed, Fitzhugh received a chapter 7 discharge on May 27, 2014.  One apparent reason for the delay in entering discharge was Fitzhugh's delay in filing his Financial Management Course Certificate.

The following items were at issue in the discharge revocation action:

Venezia Claim

In February 2009, Fitzhugh entered into a 40% contingency fee agreement for the prosecution of a personal injury claim for Richard Venezia.  A lawsuit was filed in March 2009 in state court.  When Fitzhugh was suspended from the practice of law in March 2013, another attorney took over the litigation on a pro bono basis.

Shortly after Fitzhugh's bankruptcy filing, the Venezia matter was settled.  Based on the settlement amount, Fitzhugh asserted the right to a $360,000 fee and a right to recover costs of $180,000 (Venezia Claim).  In a letter from Venezia's current attorney to Fitzhugh seeking to resolve Fitzhugh's claim for fees and costs, the attorney specifically addressed Fitzhugh's bankruptcy filing and the need to resolve any issues regarding the interests of the bankruptcy estate before he would authorize the release of any settlement funds.  In response, Fitzhugh advised the attorney that his bankruptcy "was a personal bankruptcy," and that the fees and costs he was seeking to collect belonged to his firm, "a P.C."  Actually, at that time, and when Fitzhugh entered

-3-

into the contingency fee agreement with Venezia, Fitzhugh was operating his law practice as a sole proprietorship. He did, however, create an LLC on October 21, 2013, which was five months after the petition date.

Trustee learned of Fitzhugh's pursuit of the Venezia Claim on October 26, 2013. Thereafter, counsel for Trustee requested that Fitzhugh provide him with information about the Venezia Claim, which was not disclosed in the initial schedules. Fitzhugh advised Trustee's counsel that it was his LLC that was the claimant for the fees, not him individually, and that his opposing counsel had incorrectly claimed that the funds had to be turned over to the bankruptcy court.

Three months before Fitzhugh's discharge, Trustee filed a motion to approve compromise of the Venezia Claim for $300,000 payable to the estate. Fitzhugh objected to the settlement, and at the same time sought to dismiss his chapter 7 case, maintaining that he was the best person to pursue the Venezia Claim and that he would deal with his creditors outside of bankruptcy. The bankruptcy court denied the dismissal motion; it approved Trustee's settlement of the Venezia Claim on March 21, 2014. Fitzhugh later amended his schedules to identify the Venezia Claim, which he then sought to exempt as wages.

Gilcrease/Whipp Claim

About one month prior to his bankruptcy filing, Fitzhugh filed a fee arbitration claim with the State Bar of Arizona, asserting that attorney Glynn Gilcrease, Jr. owed him money for work performed and for expenses he incurred working with Gilcrease on a case for a party named Whipp. Trustee learned of the

-4-

Gilcrease/Whipp Claim in a telephone conversation with Fitzhugh's friend, attorney Thomas Ryan, on April 28, 2014, one month before Fitzhugh's discharge in May 2014. Trustee later settled the Gilcrease/Whipp Claim for $10,000. Fitzhugh then amended his schedules to disclose the claim. Fitzhugh never disclosed the Gilcrease fee arbitration, which was pending at the time of the bankruptcy filing, in his initial SOFA or any amendments thereto.

Carranza Claim

Prior to his bankruptcy filing, Fitzhugh was pursuing a claim for legal fees from his former clients, the Madrigals. Fitzhugh was the initial attorney for the Madrigals but later withdrew. Another attorney settled the Madrigal matter for $3 million. Fitzhugh claimed he was entitled to fees from the settlement. Instead of suing the Madrigals himself for the disputed attorney's fees, Fitzhugh assigned his fee claim to Al Carranza, who asserted the claim (Carranza Claim).

Before and after his bankruptcy filing, Fitzhugh filed pleadings in the Madrigal matter asserting that he was entitled to collect the Carranza Claim. Just six days after his bankruptcy filing, Fitzhugh filed a pleading in the Madrigal matter advising the state court that "the law of this still pending case . . . is that Edward D. Fitzhugh is Plaintiff."

The Madrigal matter was still being litigated as late as February 2015. Fitzhugh never disclosed his interest in the Carranza Claim or in the Madrigal matter, either in his initial schedules and SOFA or any amendments thereto, even though these matters were pending at the time of the bankruptcy filing.

Trustee failed to state in his complaint or establish at

trial on what date he learned about the Carranza Claim and the related Madrigal matter.

Leonard Claim

In November 2012, Fitzhugh entered into an agreement to represent the Leonards. Fitzhugh would receive a 40% contingency fee if the matter settled more than 60 days before trial and a 50% contingency fee thereafter (Leonard Claim). In April 2013, Fitzhugh's co-counsel, a member of the Colorado bar, filed a lawsuit in Colorado on behalf of the Leonards. The Leonard matter was pending at the time of Fitzhugh's bankruptcy filing, and on the petition date he held rights to the Leonard Claim. Fitzhugh did not disclose his interest in the Leonard Claim in his initial or any amended schedules. Trustee learned of the Leonard Claim in September 2015. Ultimately, the Leonards sued Fitzhugh for his alleged mishandling of their case; the estate received no money for the Leonard Claim.

**B.  Trustee's discharge revocation complaint and trial**

Trustee filed a complaint seeking to revoke Fitzhugh's discharge under § 727(d)(1) and (d)(2) for intentionally failing to disclose or making false representations about the Venezia Claim, the Gilcrease/Whipp Claim, and the Carranza Claim,[4] and intentionally failing to disclose his involvement in the Gilcrease fee arbitration and the Madrigal matter related to the Carranza

---

[4]  Trustee did not yet know about the Leonard Claim, so it was not part of the complaint. However, the documents referenced above were presented at trial. Fitzhugh testified about the Leonard Claim without objection, but then later objected to Trustee's admission of the documents supporting the Leonard Claim on the basis of relevance, which the court overruled and Fitzhugh does not contest on appeal.

-6-

Claim. In Fitzhugh's answer filed by his then-attorney, Lyndon Steimel, Fitzhugh denied Trustee's allegation that he was entitled to contingency fees in any of the matters at the time of his bankruptcy filing.

At a pretrial conference in May 2015, the court adopted the parties' discovery plan that discovery would be completed by July 31, 2015. Steimel represented Fitzhugh at that hearing. Steimel also represented Fitzhugh at the final pretrial conference on September 2, 2015.

The parties filed a joint pretrial statement in October 2015. Fitzhugh's position essentially was that, since he had not earned any fees as of the petition date, none of the contingency fees in any of the matters were property of the estate. Trustee raised the Leonard Claim for the first time in the joint pretrial statement.

Trial was initially set for October 21, 2015. For personal reasons, Steimel had to withdraw from the case just prior to trial. On Fitzhugh's motion, the court agreed to continue trial to March 3, 2016, to give Fitzhugh sufficient time to prepare and to retain new counsel. In January 2016, Fitzhugh, still pro se, again sought to continue trial. The court continued trial to June 8, 2016, and later, sua sponte, rescheduled trial for June 22, 2016.

On May 26, 2016, Fitzhugh, still pro se, again moved to continue trial and to extend discovery deadlines. Fitzhugh maintained that an extension was necessary because his bankruptcy consultant had become seriously ill and was unable, until recently, to assist him in preparing for trial. Trustee opposed

-7-

the motion, arguing that this same motion had been filed, briefed, argued and denied. The bankruptcy court entered an order denying the motion for lack of cause on June 7, 2016.

Fitzhugh represented himself at trial. Fitzhugh, Trustee and Ryan testified. Fitzhugh denied any wrongful intent in not disclosing the Venezia Claim, the Gilcrease/Whipp Claim, the Carranza Claim and the Leonard Claim, even though he was made aware during the bankruptcy case that they were property of the estate. Fitzhugh stated that he did not consider these claims assets of his bankruptcy estate but, rather, assets of his LLC. He based this belief on the fact that General Motors had emerged from its bankruptcy by changing its name and continuing on with its business, so he believed that he could do the same by creating his LLC five months postpetition. Fitzhugh testified that, to his credit, he also failed to schedule things that would have benefitted him, such as wage claims and the homestead exemption.

After post-trial briefing, the bankruptcy court issued its Memorandum Decision and order revoking Fitzhugh's discharge under § 727(d)(1) and (d)(2). Fitzhugh timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court err in revoking Fitzhugh's discharge under § 727(d)(1) and (d)(2)?

2. Did the bankruptcy court abuse its discretion by not granting the motion to continue trial and to extend discovery deadlines?

////

-8-

## IV. STANDARDS OF REVIEW

For § 727 decisions, we review the bankruptcy court's conclusions of law de novo, its findings of fact for clear error, and mixed questions of law and fact de novo. Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004), aff'd, 212 Fed. App'x 589 (9th Cir. 2006) (citing Murray v. Bammer (In re Bammer), 131 F.3d 788, 792 (9th Cir. 1997) (en banc), overruling, e.g., Finalco, Inc. v. Roosevelt (In re Roosevelt), 87 F.3d 311, 314, as amended, 98 F.3d 1169 (9th Cir. 1996) (applying "gross abuse of discretion" standard), and Friedkin v. Sternberg (In re Sternberg), 85 F.3d 1400, 1404 (9th Cir. 1996) (applying "sound discretion of the bankruptcy court" standard). An erroneous view of the law may induce the bankruptcy court to make a clearly erroneous finding of fact. Ozenne v. Bendon (In re Ozenne), 337 B.R. 214, 218 (9th Cir. BAP 2006) (citing Power v. Union Pac. R.R. Co., 655 F.2d 1380, 1382-83 (9th Cir. 1981)).

The bankruptcy court's denial of a motion to reopen discovery is reviewed for an abuse of discretion. Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1026 (9th Cir. 2006).

## V. DISCUSSION

**A. The bankruptcy court applied an incorrect standard of law to revoke Fitzhugh's discharge under § 727(d)(1) and (d)(2).**

Revocation of discharge is an extraordinary remedy and is construed liberally in favor of the debtor and strictly against those seeking to revoke the discharge. Bowman v. Belt Valley Bank (In re Bowman), 173 B.R. 922, 924 (9th Cir. BAP 1994) (citing First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339, 1342 (9th Cir. 1986)). Section 727(e)(1) establishes the statutory

-9-

deadline for filing an adversary proceeding under § 727(d)(1) and (d)(2) to revoke a debtor's discharge:  under subsection (d)(1) within one year after the discharge is granted; and under subsection (d)(2) before the later of one year after the discharge was granted and the date the case is closed.  Fitzhugh's case has not closed, and Trustee filed his complaint within one year of Fitzhugh's discharge.  Thus, Trustee's complaint was timely.

### 1.    Governing law

To obtain relief under § 727(d)(1), the plaintiff must prove that the debtor committed fraud in fact.  Jones v. U.S. Tr., 736 F.3d 897, 900 (9th Cir. 2013); In re Bowman, 173 B.R. at 925. The fraud must be proven in the procurement of the discharge and requires evidence of some conduct that under § 727(a) would have been sufficient grounds for denying a discharge in the first instance, such as the debtor knowingly and fraudulently making a false oath in connection with the bankruptcy case.  Jones, 736 F.3d at 900; Miller v. Gilliam (In re Gilliam), 2012 WL 1191854, at *10 (9th Cir. BAP Apr. 6, 2012); see also In re Bowman, 173 B.R. at 925 ("The fraud must be proven in the procurement of the discharge and sufficient grounds must have existed which would have prevented the discharge").

For a claim under § 727(d)(2), the plaintiff must prove that the debtor acquired or became entitled to acquire property of the estate and knowingly and fraudulently failed to report or deliver the property to the trustee.  Both elements must be met and the plaintiff must prove that the debtor acted with the knowing intent to defraud.  In re Bowman, 173 B.R. at 925.

////

-10-

### 2.    Analysis

The bankruptcy court revoked Fitzhugh's discharge under § 727(d)(1) for his intentional failure to disclose assets and pending litigation, which could support a denial of discharge claim under § 727(a)(4) if the elements are met, and is a proper basis to revoke discharge under § 727(d)(1).  The court revoked Fitzhugh's discharge under § 727(d)(2) for his knowing and fraudulent failure to report the Venezia Claim to Trustee, which could support a claim under § 727(d)(2).

However, the court erred in applying the elements of § 727(d)(1) and (d)(2).  Trustee had to also prove, under both statutes, that he was unaware of the alleged fraud **at the time the discharge was entered.**  Ross v. Mitchell (In re Dietz), 914 F.2d 161, 163 (9th Cir. 1990) (applying same knowledge requirement for a plaintiff in § 727(d)(1) to (d)(2)) (citing Werner v. Puente (In re Puente), 49 B.R. 966, 969 (Bankr. W.D.N.Y. 1985) and Canfield v. Lyons (In re Lyons), 23 B.R. 123, 126 (Bankr. E.D. Va. 1982) ("The fact that subparagraphs 727(d)(2) and 727(d)(3) contain no language requiring the knowledge of any fraudulent conduct to be received after the discharge is granted, does not give a party in interest, who has the knowledge of the probable wrongdoing the privilege to wait until after a discharge is granted to ask the court to revoke the discharge")); Banayan v. Mesbahi (In re Mesbahi), 2006 WL 6810975, at *6 (9th Cir. BAP Oct. 10, 2006) (citing Dietz and holding that plaintiffs did not establish a claim to revoke discharge under § 727(d)(2) because they failed to prove they did not know of any fraud prior to debtor's discharge); In re Bowman, 173 B.R. at 924-25 (citing

-11-

Dietz and holding that "to effectuate revocation under § 727(d), such fraud must be discovered **after** discharge") (emphasis in original). Fitzhugh tried to raise this issue at trial, albeit imprecisely, when Trustee repeatedly stated that the relevant date for his knowledge of Fitzhugh's alleged fraud was the objection to discharge bar date.

The bankruptcy court applied the objection to discharge bar date — September 3, 2013 — as the relevant date for revoking Fitzhugh's discharge under § 727(d)(1) and (d)(2), not the entry of discharge date — May 27, 2014. The record shows that Trustee knew about the Venezia Claim and the Gilcrease/Whipp Claim **prior** to Fitzhugh's discharge, on October 26, 2013, and April 28, 2014, respectively. At oral argument before the Panel, Trustee seemed unaware that he could have sought an extension of time to object to Fitzhugh's discharge under Rule 4004 due to the Venezia Claim and the Gilcrease/Whipp Claim, even though the time for filing a complaint had expired on September 3, 2013. See Rule 4004(b)(2).

In 2011, Rule 4004(b) was amended to allow a party to request an extension of time to object to discharge after the time for objection has expired and before discharge is granted, if (A) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d), and (B) the movant did not have knowledge of those facts in time to permit an objection. Rule 4004(b)(2). The motion is to be filed promptly after the movant discovers the facts on which the objection is based. Id.

The 2011 amendment eliminated what was known as the "gap period" — the time between the expiration of the time to object to

-12-

discharge and the actual entry of discharge. Under former Rule 4004, any requests for extensions of time to object to discharge had to be made before the bar date. Thus, if a party did not learn of the debtor's fraudulent conduct until after the bar date, but before the discharge was entered, the party was precluded from bringing a § 727(d) complaint.

Courts struggled with the issue of whether a party that obtains knowledge of fraudulent activity within the gap period obtained that knowledge "after the granting" of the discharge. Some courts found that the gap period frustrated a party's rights and held that, in such cases, the court had discretion to deem the objection to discharge bar date as the effective discharge date. See In re Dietz, 914 F.2d at 164 (where no discharge was entered discharge is deemed entered for purposes of § 727(d) upon the expiration of the deadline to object to discharge); England v. Stevens (In re Stevens), 107 B.R. 702, 706 (9th Cir. BAP 1989) ("the rights of parties . . . would be unreasonably frustrated, if Rule 4004 were read to create a temporary period where no . . . complaint under § 727 could be brought"); In re Staub, 208 B.R. 602, 606-07 (Bankr. S.D. Ga. 1997) ("rational sense" requires that there be no "safe haven gap period").

With the 2011 amendment to Rule 4004, reliance on these cases is no longer necessary. Rather, in such circumstances, the party must now utilize Rule 4004(b)(2) and obtain an extension of time to object to discharge or risk losing the ability to bring a complaint under § 727(d)(1) or (d)(2).

As for the Carranza Claim or the Madrigal matter, Trustee failed to establish on what date he learned about them, and it was

-13-

his burden to do so. In re Bowman, 173 B.R. at 924-25; U.S. Tr. v. Franz (In re Franz), 540 B.R. 765, 778 (Bankr. D. Mont. 2015) (to obtain discharge revocation under § 727(d)(2) the plaintiff bears the burden of proof and must establish all elements by a preponderance of the evidence).

Accordingly, the bankruptcy court could not consider the Venezia Claim, the Gilcrease/Whipp Claim, or the Carranza Claim and Madrigal matter for revoking Fitzhugh's discharge under § 727(d)(1) or (d)(2).

The only potential estate asset Trustee was unaware of prior to Fitzhugh's discharge was the Leonard Claim. Hence, the Leonard Claim, assuming the discharge revocation complaint can be amended to conform to the evidence at trial,[5] is the only matter the court could consider for Trustee's claim under § 727(d)(1) or (d)(2). For its decision to revoke Fitzhugh's discharge under § 727(d)(2), the court relied only on the Venezia Claim for support. However, as we discussed above, the court could not consider that claim because Trustee was aware of it, and even settled it, several months before entry of Fitzhugh's discharge.

The bankruptcy court will have to determine on remand if the Leonard Claim (if applicable) provides a sufficient basis to revoke Fitzhugh's discharge under either § 727(d)(1) or (d)(2).

---

[5] Civil Rule 15(b)(2), applicable here by Rule 7015, provides:

When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move — at any time, even after judgment — to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

-14-

**B. Fitzhugh has waived any argument respecting the bankruptcy court's decision to deny his motion to continue trial and to extend discovery deadlines.[6]**

Fitzhugh contends that the bankruptcy court abused its discretion by not granting his motion to continue trial and to extend discovery deadlines. Other than stating that "the courts [sic] refused [sic] to grant Appellant's request for a continuance of the trial substantially prejudiced Appellant . . . .", Fitzhugh's opening brief fails to present any argument or authority in support of his position that the court abused its discretion. He also failed to present the matter as an issue on appeal or provide a proper standard of review in violation of Rule 8014(a). As a result, he has waived this issue. Wake v. Sedona Inst. (In re Sedona Inst.), 220 B.R. 74, 76 (9th Cir. BAP 1998) (matters on appeal not specifically and distinctly argued in appellant's opening brief are waived).

## VI. CONCLUSION

Based on the foregoing reasons, we VACATE and REMAND the bankruptcy court's order revoking Fitzhugh's discharge under § 727(d)(1) and (d)(2) with instructions that the court consider only those items which Trustee did not learn of until after entry of the discharge. We AFFIRM the court's order denying Fitzhugh's motion to continue trial and to extend discovery deadlines.

---

[6] Although not addressed by the parties, the order denying Fitzhugh's motion to continue trial and to extend discovery deadlines was an interlocutory order that "merged" into the final order determining revocation of the discharge and dismissing the adversary proceeding. See United States v. Real Prop. Located at 475 Martin Lane, Beverly Hills, Cal., 545 F.3d 1134, 1141 (9th Cir. 2008) (under merger rule interlocutory orders entered prior to the judgment merge into the judgment and may be challenged on appeal). Accordingly, we are able to review the order.

-15-